IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| LINN ENERGY, LLC, *et al.*, | § § | Case No. 16-60040 (DRJ) |
| Debtors. | § § § | (Jointly Administered) |

**SUPPLEMENTAL OBJECTION OF WILMINGTON TRUST COMPANY TO (1) DEBTORS' MOTION FOR FINAL ORDERS (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS, AND (C) GRANTING RELATED RELIEF; AND (2) DEBTORS' MOTION FOR FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM AND MAINTAIN EXISTING BANK ACCOUNTS AND (B) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, AND (II) GRANTING RELATED RELIEF**
[Related Docket Nos. 16, 18, and 74]

Wilmington Trust Company (the "Indenture Trustee"), in its capacity as indenture trustee for certain unsecured notes issued by Linn Energy, LLC and Linn Energy Finance Corp., through undersigned counsel, hereby submits this supplemental objection (the "Objection") to (1) the *Debtors' Motion for Final Orders (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to Prepetition Lenders, and (C) Granting Related Relief* [Docket No. 18] (the "Cash Collateral Motion"); and (2) the *Debtors' Motion for Final Orders (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System and Maintain Existing Bank Accounts and (B) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief* [Docket No. 16] (the "Cash Management Motion," and together with the Cash Collateral Motion, the "Motions").[1] In support of its Objection, the Indenture Trustee respectfully submits as follows:

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motions and exhibits thereto.

**BACKGROUND**

1. On May 11, 2016, Linn Energy, LLC and fourteen affiliate entities filed separate voluntary petitions for relief under chapter 11 of title 11 of the United States Code. On May 12, 2016, this Court granted the Debtors' emergency motion for joint administration and consolidated the fifteen separate cases "for procedural purposes only." Order (A) Directing Joint Administration of Chapter 11 Cases and (B) Granting Related Relief ("Joint Administration Order") [Docket No. 45] ¶ 2; *see also* Debtors' Emergency Motion for Entry of an Order (A) Directing Joint Administration of Chapter 11 Cases and (B) Granting Relief [Docket No. 5] ¶ 8 (stating that joint administration is being requested to provide "significant administrative convenience without harming the substantive rights of any party in interest").

**I.   THE PROPOSED CASH COLLATERAL AND CASH MANAGEMENT ORDERS**

2. On May 11, 2016, the Debtors filed their Cash Collateral Motion seeking the Court's approval of proposed interim and final cash collateral orders (the "Proposed Cash Collateral Order").[2] On the same day, the Debtors filed their Cash Management Motion seeking approval of proposed interim and final cash management orders (the "Proposed Cash Management Order").

3. In exchange for allowing the Debtors to use the Prepetition First Lien Linn Secured Parties' cash collateral on an uncontested basis, the Proposed Cash Collateral Order would grant the lenders, among other things, superpriority liens and administrative claims under section 507(b) of the Bankruptcy Code to the extent of "Linn Collateral Diminution." Proposed

---

[2] As of the filing of this Objection, the Debtors have not yet filed with the Court a proposed final cash collateral order. For purposes of this motion, the Indenture Trustee assumes that the proposed final cash collateral order will contain the same terms and conditions as the proposed interim cash collateral order.

2

Cash Collateral Order ¶ 9. The Proposed Cash Collateral Order defines "Linn Collateral Diminution" as:

> an amount equal to the diminution of the value of the Prepetition First Lien Linn Lenders' interest in the Prepetition Linn Collateral from and after the Petition Date **for any reason**, including the use of Linn Cash Collateral, the use, sale, lease, consumption, or disposition of Prepetition Linn Collateral, or the imposition of the automatic stay.

*Id.* ¶ 9(b)(i)(3) (emphasis added).

4. The Proposed Cash Collateral Order further provides that the Prepetition First Lien Linn Secured Parties' adequate protection claims may be asserted "against each of the Linn Debtors on a joint and several basis," regardless of which specific Linn Debtor is obligated to the Prepetition First Lien Linn Secured Parties under prepetition liens. *Id.* ¶ 9(a)(i).

5. The Proposed Cash Collateral Order also would provide the Prepetition First Lien Linn Secured Parties with numerous additional benefits, including without limitation:

- a partial waiver of the Debtors' rights to surcharge collateral under section 506(c) of the Bankruptcy Code, *id.* ¶ 21;

- senior priming adequate protection liens on the proceeds of all avoidance actions, without a carve-out for avoidance actions against the Prepetition First Lien Linn Secured Parties, *id.* ¶ 9(a)(i);

- a waiver of the Debtors' reliance on the equitable doctrine of "marshaling" or "any other similar doctrine," *id.* ¶ 20(a);

- monthly postpetition interest payments to the Prepetition First Lien Linn Secured Parties, *id.* ¶ 10(a);

- a waiver of the Debtors' rights to assert the "equities of the case" exception under section 552(b) of the Bankruptcy Code, *id.* ¶ 23;

- protection afforded to a "good faith" purchaser or lessee under section 363(m) of the Bankruptcy Code, *id.* ¶¶ 6(d), 28(c); and

- the Debtors' stipulation to the validity and amount of the Prepetition First Lien Linn Secured Parties' purported liens and claims, *id.* ¶ 5.

6. The Proposed Cash Management Order would provide for claims under section 503(b)(1) of the Bankruptcy Code with respect to postpetition intercompany transfers, *see* Proposed Cash Management Order ¶ 43; however, the Proposed Cash Collateral Order provides that such claims would be junior to the Prepetition First Lien Linn Secured Parties' existing liens and adequate protection claims. *See* Proposed Cash Collateral Order ¶ 9(a)(i). Accordingly, the Proposed Cash Management Order would allow the various Linn Debtors to borrow funds from Linn Energy, LLC without affording Linn Energy, LLC **any** of the protections typically afforded to DIP lenders.

7. The Proposed Cash Collateral Order's adequate protection package, coupled with the relief requested in the Proposed Cash Management Order, would result in a windfall to the Prepetition First Lien Linn Secured Parties at the expense of the Debtors' unsecured creditors.

## II. THE COURT'S MODIFICATION OF THE PROPOSED DEFINITION OF "LINN COLLATERAL DIMINUTION" ON AN INTERIM BASIS

8. After argument at the First Day Hearing on May 13, 2016, this Court ordered that the definition of "Linn Collateral Diminution" proposed by the Debtors be modified on an interim basis. *See* Interim Order Under 11 U.S.C. §§ 105, 361, 362, 363, 507 and 552, and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) (the "<u>Interim Cash Collateral Order</u>"). Specifically, the Interim Cash Collateral Order entered by the Court provides that "Linn Collateral Diminution" shall mean:

> an amount equal to the diminution of the value of the Prepetition First Lien Linn Lenders' interest in the Prepetition Linn Collateral

> from and after the Petition Date **for the use, sale, or lease of the Prepetition Linn Collateral** . . .

Interim Cash Collateral Order ¶ 9(b)(i)(3) (emphasis added).

## ARGUMENT

I. **THE PROPOSED CASH COLLATERAL AND CASH MANAGEMENT ORDERS IMPROPERLY DISREGARD THE LEGAL SEPARATENESS OF EACH DEBTOR AND FAIL TO PROTECT THE RIGHTS OF EACH INDIVIDUAL ESTATE AND ITS RESPECTIVE CREDITORS.**

9. Through the Proposed Cash Collateral and Cash Management Orders, the Debtors seek to ignore, without any basis in law or fact, the separate corporate identity of each of the individual Linn Debtors. Indeed, rather than respecting long-standing and bedrock principles of corporate and bankruptcy law, the Debtors seek approval of a scheme that would treat the various Linn Debtors not as individual estates with distinct assets, liabilities, and duties to their respective creditors, but as a combined enterprise with shared assets and obligations. The consequence of this proposal would be the improvement of the position of certain Linn Debtors (and by extension, their creditors) to the detriment of other Linn Debtors and their creditors. There is no evidence in the record that would allow this Court to reach that result.[3]

---

[3] At the First Day Hearing, counsel for the Prepetition First Lien Linn Secured Parties indicated that his clients may later argue that they have a constructive trust or equitable lien over the cash drawn on the revolving facility, notwithstanding that the cash was deposited into accounts that are not subject to perfected liens. First Day Hr'g Tr. at 45:1-10. This issue is not currently before the Court, but even if the Prepetition First Lien Linn Secured Parties were entitled to a constructive trust or equitable lien, such relief would provide no basis to ignore the corporate separateness of the various Linn Debtors. In any event, neither a constructive trust nor equitable lien would be appropriate relief here. The Prepetition First Lien Linn Secured Parties cannot carry their burden of establishing one of the two preconditions to the imposition of a constructive trust: that the Debtors committed actual fraud or breached fiduciary duties. *See In re Haber Oil Co.,* 12 F.3d 426, 436 (5th Cir. 1994) ("The burden of establishing the existence of the constructive trust rests on the claimant."); *In re Carolin Paxson Advertising, Inc.*, 938 F.2d 595, 597 (5th Cir. 1991). In fact, far from acting in secret with a purpose to defraud, the Debtors announced the revolver draw publicly, stating that the funds would be used for "general corporate purposes." Linn Energy, LLC, Form 8-K (Feb. 4, 2016). There is no evidence that the Prepetition First Lien Linn Secured Parties ever objected to the revolver draw. Nor can the Prepetition First Lien Linn Secured Parties establish that they and the Debtors ever intended the lenders to have a security interest in the funds drawn on the revolver, a necessary predicate to imposition of an equitable lien. *See In re Douglass*, 413 B.R. 573, 582 (Bankr. W.D. Tex. 2009) ("The fundamental element necessary to the creation of an equitable lien is the existence of an

5

### A. The Separate Corporate Identities of Individual Bankruptcy Estates Must Be Respected.

10. It is well-established that, absent extraordinary circumstances not present here, the corporate form must be respected. *See, e.g.*, *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 573 (5th Cir. 2001) (citing *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984) (disregarding the corporate form is "an exception to the general rule which forbids disregarding corporate existence") (internal citations omitted)). Courts "take the corporate form and corporate formalities very seriously" and disregard the corporate fiction only in the "exceptional case." *Case Fin., Inc. v. Alden*, No. 1184-VCP, 2009 Del. Ch. LEXIS 153, at *13 (Del. Ch. Aug. 21, 2009) (internal citation omitted); *accord First Nat'l Bank in Canyon v. Gamble*, 132 S.W.2d 100, 103 (Tex. 1939) (stating that the corporate form must be respected unless the legal fiction "is used as a means of perpetrating fraud or is relied upon to justify wrongdoing"). Piercing of the corporate veil is appropriate only where "the corporate entity is used as a sham to perpetrate fraud or avoid personal liability." *Joslyn Mfg. Co. v. T.L. James & Co., Inc.*, 893 F.2d 80, 83 (5th Cir. 1990).

11. Respect for the corporate form applies with full force in chapter 11 bankruptcy cases. *See* 11 U.S.C. § 541(a)(1); *In re Las Torres Development, L.L.C.*, 413 B.R. 687, 699 (Bankr. S.D. Tex. 2009). Specifically, the Bankruptcy Code provides that the petition filed by each debtor creates individual "estate[s]" comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case[s]." 11 U.S.C. § 541(a)(1). As explained by the Bankruptcy Court for the Northern District of Texas, Congress has required, through its choice of language, "that relief under chapter 11 be on a corporation-by-corporation, rather than an enterprise basis." *Mirant Corp. v. Morgantown OL1 LLC*, 327 B.R. 262, 272

---

express or implied contract. The agreement to create the security interest must be an absolute right to security and not a promise based upon a conditional future event.").

(Bankr. N.D. Tex. 2005); *see also* 11 U.S.C. § 301 (providing for voluntary commencement of a case by filing by "an entity" of a petition; § 101(15) (defining "entity" to include "person"); § 101(41) (defining "person" to include "corporation"). Congress could have chosen language that would have allowed for the pooling of the assets of corporate families, but "[i]t did not elect such an approach." *Mirant Corp.*, 327 B.R. at 272.[4]

12. Consequently, "the assets of each joint debtor are property of separate bankruptcy estates and each estate also has different liabilities." *In re Las Torres Development, L.L.C.*, 413 B.R. at 699. Importantly, the "rules regarding participation in distributions from an estate should not change when a family of debtors seeks relief under chapter 11." *Mirant Corp. v. Morgantown OL1 LLC*, 327 B.R. 262, 272 (Bankr. N.D. Tex. 2005). Rather, "[e]ach entity in the group must be treated as separate for purposes of satisfying its creditors" and the assets of one debtor's estate "must first be devoted to satisfaction of [its] obligations before they may be used to provide return to creditors of [the estate's] affiliates." *Id.*[5]

---

[4] Although bankruptcy courts will in the rarest of circumstances disregard corporate formalities and substantively consolidate several bankruptcy estates, there is a strong presumption against such consolidation. Where approved, substantive consolidation results in the combination of the assets of all consolidated estates for purposes of satisfying the obligations of individual estates. *See, e.g.*, *In re AHF Dev., Ltd.*, 462 B.R. 186, 195 (Bankr. N.D. Tex. 2011). Forcing all claimants to seek recovery from a single asset pool "may affect profoundly creditors' rights and recoveries," and, therefore, substantive consolidation is an "extreme" and "rough justice" remedy that may be used only in extreme circumstances as a "last resort." *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005), *as amended* (Aug. 23, 2005), *as amended* (Sept. 2, 2005), *as amended* (Oct. 12, 2005), *as amended* (Nov. 1, 2007); *accord In re DRW Prop. Co. 82*, 54 B.R. 489, 494 (Bankr. N.D. Tex. 1985) (courts must "invoke their equitable power to grant substantive consolidation sparingly"); *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 499 (5th Cir. 2002) (substantive consolidation is an "extreme and unusual" remedy). There is no basis for the Court to order substantive consolidation in these cases.

[5] *Accord In re Cash*, No. 91-60968, 1994 Bankr. LEXIS 2059, at *4 (Bankr. N.D. Ohio Dec. 15, 1994) ("The assets of each estate can only be used to satisfy claims against that estate."); *In re N.S. Garrott & Sons*, 63 B.R. 189, 192 (Bankr. E.D. Ark. 1986) ("Creditors of [the insolvent estate] have no legal right to look to the assets of the solvent [estate] for payment of their claims. The reverse is also prohibited."); *In re Scholz*, 57 B.R. 259, 262 (Bankr. N.D. Ohio 1986) ("[T]he creditors of each [estate] have the right to look to the assets of each individual estate for satisfaction of the obligations.").

7

13. This Court recognized these corporate separateness principles in a chapter 11 case involving two jointly administered debtors represented by the same counsel. *See In re Las Torres Development, L.L.C.*, 413 at 687. In *Las Torres*, this Court denied the debtors' motion to use the cash collateral of one debtor to pay the administrative expenses of the other debtor, noting that "[a]dministrative expenses incurred in each jointly administered debtor's bankruptcy estate are not treated as joint debt." *Id.* at 698. This Court reasoned that "[t]he administrative expenses of one jointly administered debtor should not be paid out of the other jointly administered debtor's cash collateral because joint administration does 'not affect the substantive rights of claimants or the respective debtor estates.'" *Id.* at 698-99 (quotation omitted); *see also In re Mckenzie Energy Corp.*, 228 B.R. 854, 874 (Bankr. S.D. Tex. 1998) ("Joint administration is designed in large part to promote procedural convenience and cost efficiencies which do not affect the substantive rights of claimants or the respective debtor estates.").

14. Courts in other jurisdictions also recognize that the mere joint administration of multiple debtor estates for reasons of judicial economy does not eliminate the individual identities of separate debtor estates. *See, e.g.*, *In re Appalachian Fuels, LLC*, 493 B.R. 1, 21 (B.A.P. 6th Cir. 2013) (affirming bankruptcy court's holding that debtors should not be held jointly and severally liable for administrative expense claims and that the expenses of each jointly administered estate are not treated as joint debt); *In re Eads*, 307 B.R. 219, 224 (W.D. Mo. 2004) (holding in chapter 7 case that administrative claims for attorneys' fees are not joint debts and must be assessed against each bankruptcy estate individually).

15. Here, each Debtor filed a separate chapter 11 petition, creating a separate estate for each Debtor comprised of that particular Debtor's assets, liabilities, and interests. *See*

11 U.S.C. § 541(a)(1); *In re Las Torres Dev., L.L.C.,* 413 B.R. at 699. Although this Court has entered an order granting joint administration, the individual assets and obligations of each of the Debtors' estates has not changed. *See* Joint Administration Order ¶ 2 (providing that "[t]he above-captioned chapter 11 cases are consolidated for procedural purposes only . . ."). Accordingly, each estate should be treated as an entity separate from the estates of the other Debtors. *See, e.g.*, *In re Tribune Co.*, 464 B.R. 126, 182 (Bankr. D. Del. 2011).

> **B. Because the Individual Linn Debtors Must Be Treated as Separate Estates and There Is No Basis Here to Substantively Consolidate Them or Pierce their Corporate Veils, this Court Cannot Grant the Relief Requested in the Proposed Cash Collateral and Cash Management Orders.**

16. Despite clear authority to the contrary, the Debtors, through the Proposed Cash Collateral and Cash Management Orders, seek to treat the various Linn Debtors as a consolidated enterprise without regard to their distinct assets and liabilities, which would result in an improper substantive consolidation of their individual estates. Absent an order of this Court consolidating the assets and liabilities of the various Linn Debtors based upon record evidence that the legal separateness of the Linn Debtors is a sham used by the Debtors to perpetrate a fraud, such substantive consolidation is entirely inappropriate. *See, e.g.*, *Joslyn Mfg. Co. v. T.L. James & Co., Inc.*, 893 F.2d 80, 83 (5th Cir. 1990).

17. Specifically, the Debtors seek approval of a cash management system that is predicated upon the consumption of Unencumbered Cash of **one** Linn Debtor to satisfy the operational funding and adequate protection needs of **all** of the other Linn Debtors under a formula negotiated with the Prepetition First Lien Linn Secured Parties. *See* Mesterharm Declaration ¶¶ 29, 31. Under this proposed scheme, the Debtors will move funds from the Unencumbered Cash Accounts at Linn Energy, LLC to other accounts subject to the Prepetition First Lien Secured Parties' alleged liens, without having made any showing that such

transactions would benefit the owner of the Unencumbered Cash Accounts, Linn Energy, LLC. *See id*; Proposed Cash Collateral Order ¶ 7.  Further, all receivables would be deposited in accounts subject to the lenders' alleged liens, ensuring that none of the funds drawn from the Unencumbered Cash Accounts at Linn Energy, LLC during the pendency of these cases would be replaced.  As a result, Linn Energy, LLC will be **forced to act as a DIP lender** to the other Linn Debtors, without receiving any of the protections typically afforded to and negotiated by a DIP Lender.

18.     Similarly, the Proposed Cash Collateral Order provides that the Prepetition First Lien Linn Secured Parties will receive allowed administrative claims "against **each** of the Linn Debtors on **a joint and several basis**."  Proposed Cash Collateral Order ¶ 9(a)(i) (emphasis added).  The Prepetition First Lien Linn Secured Parties would also be granted superpriority priming adequate protection liens on the unencumbered assets of each Linn Debtor, including the Unencumbered Cash at Linn Energy, LLC and any of its proceeds.  *Id.* ¶ 9(b).  These provisions would allow the assets of one Linn Debtor to be used to adequately protect the Prepetition First Lien Linn Secured Parties for the diminution in the value of collateral owned by a different Linn Debtor, effectively cross-collateralizing the liens of the Prepetition First Lien Linn Secured Parties.  *See Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co.)*, 963 F.2d 1490, 1495 (11th Cir. 1992) (cross-collateralization is incompatible with bankruptcy law because it is directly contrary to the fundamental priority scheme established by Bankruptcy Code); *see also In re Tri-Union Develop. Corp.*, 253 B.R. 808, 814 (Bankr. S.D. Tex 2000) ("[I]t is improper under the current Code and caselaw for the debtor, pre-confirmation, to cross-collateralize or 'refinance and re-collateralize' a pre-petition secured debt secured by substantially all of the debtor's assets.") (citing *Saybrook*, 963 F.2d 1490).  Such

cross-collateralization will improve the position of creditors at certain Linn Debtor estates to the detriment of creditors at other Linn Debtor estates. In particular, Linn Energy, LLC, which as of the Petition Date held approximately $424 million in unencumbered cash, lacks any business justification for consenting to this joint and several liability, much less a sufficient business justification.

19. Although the Proposed Cash Management Order appears to respect the corporate separateness of the Linn Debtors by providing for claims under section 503(b)(1) of the Bankruptcy Code on account of post-petition intercompany transfers, Proposed Cash Management Order ¶ 43 (providing for such claims "[t]o ensure **each individual Debtor** will not, at the expense of its creditors, fund the operations of another entity" (emphasis added)), this protection is stripped away by the Proposed Cash Collateral Order, which provides that the claims are **junior to** the Prepetition First Lien Linn Secured Parties' existing liens and adequate protection claims. *See* Proposed Cash Collateral Order ¶ 9(a)(i) (providing administrative claims under sections 503(b) and 507(b) of the Bankruptcy Code with respect to all of the adequate protection obligations, "**with priority over any and all other administrative claims** against the Linn Debtors . . . subject only to the Linn Carve Out") (emphasis added).

20. Each of these provisions improperly ignores estate separateness and works to substantively consolidate the Debtor estates by using the assets of Linn Energy, LLC to benefit other estates and their creditors without providing any consideration in return. As in *Las Torres*, the Debtors impermissibly seek to transfer the assets of one debtor to another without adequate consideration. *See In re Las Torres Dev.*, *L.L.C.,* 413 B.R. at 699; *In re Texas Standard Oil Co.*, No. 08-34031-H4-11, 2008 WL 5479114, at *11-12 (Bankr. S.D. Tex. Nov. 12, 2008) (refusing to permit a transfer of assets from a debtor to a related party for no

consideration). The Debtors cannot here seek to use the assets of one debtor to satisfy the liabilities of another in the absence of a substantive consolidation order. Where the court has not expressly permitted such treatment, such treatment is prohibited. *See In re CRB Partners, LLC*, No. 11-11915-CAG, 2013 WL 796566, at *13 (Bankr. W.D. Tex. Mar. 4, 2013) (denying confirmation where the plan treated jointly administered estates as though they were substantively consolidated).

21. The mere fact that these cases are jointly administered is no basis upon which the separateness of each Debtor entity can or should be disregarded. *See, e.g.*, *id.* at *13 ("Nothing in [Federal] Rule [of Bankruptcy Procedure] 1015 [permitting joint administration] automatically permits two separate debtors with jointly administered cases to mingle their assets and obligations."); *Appalachian Fuels*, 493 B.R. at 21 ("In no way does joint procedural administration merge [ ] the assets and liabilities of the debtor entities into a unitary debtor estate . . . .") (internal quotation marks and citation omitted)). Joint administration is a mere procedural device and should have no impact on the parties' substantive rights. *See CRB*, 2013 WL 796566, at *13.

22. As made clear in its initial objection, the Indenture Trustee does not object to the Debtors using cash on a consolidated basis as necessary to fund their businesses, so long as intercompany transfers are fully protected by giving each transferring Linn Debtor true DIP lending protections – i.e., first superpriority liens and administrative expense claims senior to all other liens and claims. Without such protections, however, the rights of Linn Energy, LLC and its creditors (and potentially other Linn Debtors and their creditors) will be severely and irreparably prejudiced.

**II.    THE PROPOSED ADEQUATE PROTECTION PACKAGE IS OVERBROAD AND SHOULD BE MODIFIED TO PREVENT A WINDFALL TO THE PREPETITION FIRST LIEN LINN SECURED PARTIES AND TO PROTECT THE RIGHTS OF UNSECURED CREDITORS.**

23.    To ensure that secured creditors are not unjustly enriched at the expense of other stakeholders, the Bankruptcy Code allows for adequate protection only to the extent that the value of the secured creditor's interest in the collateral declines as a result of either (i) the debtor's use of such collateral during the pendency of the bankruptcy case; or (2) the automatic stay.  11 U.S.C. §§ 361, 363(e); *see also* 4 Collier on Bankruptcy ¶ 507.14 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2015) ("A creditor is entitled to section 507(b) priority **only to the extent that the claim arose from the stay of action against property under section 362, from the use, sale or lease of property pursuant to section 363**, or from the granting of a lien under section 364(d).") (emphasis added).  Adequate protection is intended to protect a secured creditor from harm caused by the imposition of the automatic stay, not to simply underwrite any decline in value.  A diminution claim is not appropriate if the decline in the value of the secured creditor's collateral is due to other causes.  *See id*.

24.    The Fifth Circuit has made clear that "the language of the adequate protection provisions suggests that they were intended to protect a secured creditor against a decrease in the value of its collateral **due to the debtor's use, sale or lease of that collateral during the stay**." *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1389 (5th Cir. 1986), *on reh'g*, 808 F2d 363 (5th Cir. 1987), *aff'd*, *sub nom.*, *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988) (emphasis added).  Thus, "if

[collateral] is not being misused or depreciating, then a secured creditor is not entitled to adequate protection payments." *Id.* at 1399 (citing 124 Cong. Rec. 32,419 (1978)).[6]

25. Adequate protection should not improve the position of secured creditors in relation to other creditors. *See In re Weinstein*, 227 B.R. 284, 297 (B.A.P. 9th Cir. 1998) (noting that "[p]ermitting such a bonus would be akin to providing the undersecured creditor with interest or lost opportunity costs which is expressly prohibited by *Timbers*").[7]

### A. The Proposed Cash Collateral Order Imposes an Improper and Inequitable Test for Quantifying Diminution in the Value of Collateral.

26. As explained in the Indenture Trustee's initial objection to the Motions, the definition of "Linn Collateral Diminution" in the Proposed Cash Collateral Order would afford the Prepetition First Lien Linn Secured Parties more protection than that permitted by the Bankruptcy Code and effectively give them free downside protection against the decline in value of their interests in all collateral – not just cash collateral – during the reorganization process, all at the expense of the unsecured creditors. *See* Objection of Wilmington Trust Company to the Motions [Docket No. 74] ¶¶ 24-31. For the reasons stated in the initial objection, which is incorporated by reference herein, any adequate protection granted by the Court should only be allowed if: (i) the Prepetition First Lien Linn Secured Parties demonstrate that the stay or use of their collateral caused them harm; and (ii) any diminution in value is determined on an aggregate basis. Accordingly, the Indenture Trustee asks that the Proposed

---

[6] *Accord In re Self*, 239 B.R. 877, 881 (Bankr. E.D. Tex. 1999) ("[A] movant [requesting stay relief] must initially demonstrate that . . . a decline in the value of its collateral is either occurring or is threatened . . . [o]nly upon presentation of such a *prima facie* case by a movant does the burden shift to the debtor-respondent to prove that the collateral is not declining in value or that the secured creditor is otherwise adequately protected.").

[7] Indeed, this prohibition on windfalls disguised as adequate protection is rooted in the fact that certain provisions of the Bankruptcy Code "are premised on the equitable principle that the unencumbered assets of a debtor's estate will not be used to benefit one class of creditors at the expense of another class." *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d at 1387.

Cash Collateral Order be modified to include the definition of "Linn Collateral Diminution" used in the Interim Cash Collateral Order. *See* Interim Cash Collateral Order ¶ 9(b)(i)(3).

### B. Proposed Protections under Section 363(m) of the Bankruptcy Code Are Improper and Should Be Stricken.

27. The Debtors overreach in seeking an order for protection under section 363(m) of the Bankruptcy Code. *See* Proposed Cash Collateral Order ¶¶ 6(d), 28(c). This proposed protection should be stricken.

28. Section 363(m) of the Bankruptcy Code protects good faith purchasers from reversal of a sale or lease of property unless a stay pending appeal of the sale or lease is filed. 11 U.S.C. § 363(m). The protections afforded debtors under section 363(m) apply only to the *sale* or *lease* of property – not the use of cash collateral. *See* 11 U.S.C. § 363(m); *In re Tek-Aids Indus., Inc.*, 145 B.R. 253, 259 n.6 (Bankr. N. Ill. 1992) ("§ 363(m) deals only with a sale or lease of property. Here, cash collateral was neither sold nor leased. It was used. . . Use is clearly a concept independent of lease or sale under § 363.").

29. Because the Proposed Cash Collateral Order does not contemplate the sale or lease of property, the Debtors should not be granted section 363(m) protections.

### C. The Final Cash Collateral and Cash Management Orders Are Objectionable on Additional Grounds.

30. In addition to the specific grounds for objection addressed above, there are numerous additional reasons why the Proposed Cash Collateral and Cash Management Orders should not be entered by this Court. The Indenture Trustee understands that these additional grounds are to be addressed in a separate objection filed by the Official Committee of Unsecured Creditors (the "Committee Objection"), and the Indenture Trustee hereby joins in the Committee Objection and the grounds for objection set forth therein.

## **RESERVATION OF RIGHTS**

31. This Objection is without prejudice to, and the Indenture Trustee hereby fully reserves, its rights to raise additional arguments in respect of the Cash Collateral Motion, the Proposed Cash Collateral Order, the Cash Management Motion, the Proposed Cash Management Order, or any final order granting the Motions in whole or in part, or other appropriate relief if the circumstances warrant. The Objection is also without prejudice to the rights of the Indenture Trustee to contest, object to, or challenge the validity of any lien claimed by any creditor of the Debtors on the assets of any of the Debtors.

[Remainder of Page Intentionally Left Blank]

## **CONCLUSION**

**WHEREFORE**, the Indenture Trustee respectfully requests that the Court (i) DENY the Motions; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: July 5, 2016
      Fort Worth, Texas

              COLE SCHOTZ P.C.

              /s/  Michael D. Warner
              Michael D. Warner, Esq. (TX Bar No. 00792304)
              301 Commerce Street, Suite 1700
              Fort Worth, TX 76102
              Telephone:  (817) 810-5250
              Facsimile:  (817) 977-1611
              mwarner@coleschotz.com

                   - and -

              MILBANK, TWEED, HADLEY & M$^c$CLOY LLP

              Gerard H. Uzzi, Esq. (admitted *pro hac vice*)
              28 Liberty Street
              New York, NY 10005
              Telephone:  (212) 530-5000
              Facsimile:  (212) 530-5219
              guzzi@milbank.com

              David S. Cohen, Esq. (admitted *pro hac vice*)
              1850 K Street NW, Suite 1100
              Washington, DC 20006
              Telephone:  (202) 835-7500
              Facsimile:  (202) 263-7586
              dcohen2@milbank.com

                   -and-

KILPATRICK TOWNSEND & STOCKTON LLP

Todd C. Meyers, Esq. (admitted *pro hac vice*)
Robbin S. Rahman, Esq. (*pro hac vice* pending)
1100 Peachtree Street, NE, Suite 2800
Atlanta, Georgia 30309-4530
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
tmeyers@kilpatricktownsend.com
rrahman@kilpatricktownsend.com

*Counsel for Wilmington Trust Company, as Indenture Trustee*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 5, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the District of Texas which gives notice to all counsel of record.

/s/ Michael D. Warner<br>
Michael D. Warner