# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LINN ENERGY, LLC, *et al.*,[1] | ) | Case No. 16-60040 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING PROCEDURES TO REJECT OR ASSUME EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) GRANTING RELATED RELIEF

> **A HEARING, IF NECESSARY, WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 27, 2016 AT 9:00 AM IN COURTROOM 400, 4th FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are as follows: Linn Energy, LLC (7591); Berry Petroleum Company, LLC (9387); LinnCo, LLC (6623); Linn Acquisition Company, LLC (4791); Linn Energy Finance Corp. (5453); Linn Energy Holdings, LLC (6517); Linn Exploration & Production Michigan LLC (0738); Linn Exploration Midcontinent, LLC (3143); Linn Midstream, LLC (9707); Linn Midwest Energy LLC (1712); Linn Operating, Inc. (3530); Mid-Continent I, LLC (1812); Mid-Continent II, LLC (1869); Mid-Continent Holdings I, LLC (1686); Mid-Continent Holdings II, LLC (7129). The Debtors' principal offices are located at JPMorgan Chase Tower, 600 Travis, Suite 5100, Houston, Texas 77002.

**Jurisdiction, Venue, and Procedural Background**

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested in this motion are sections 105(a), 363(f), and 365(a) of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. On May 11, 2016, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date"). A detailed description of the facts and circumstances leading to these chapter 11 cases is set forth in the *Declaration of Arden L. Walker, Jr., Chief Operating Officer of Linn Energy, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 19]. The Debtors continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 23, 2016, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 159].

**Relief Requested**

3. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing and approving procedures (as described herein, the "Contract and Lease Procedures") by which the Debtors may reject or assume certain of their prepetition executory contracts (collectively, the "Contracts") and prepetition unexpired leases (collectively, the "Leases").

I.      **The Debtors' Executory Contracts and Unexpired Leases**.

4.      As of the Petition Date, the Debtors are party to approximately 25,000 Contracts and Leases, which include agreements with vendors for the supply of goods and services and leases for real and personal property.  The Debtors have begun the process of evaluating all of their Contracts and Leases to determine whether such Contracts and Leases should be rejected ahead of confirmation of a chapter 11 plan.  Absent the relief requested in this Motion, the Debtors would be required to file separate motions to reject or assume individual Contracts and Leases, resulting in substantial costs to, and administrative burdens on, the Debtors' estates—not to mention the additional burden such an approach would place on the Court's docket.  To that end, the Debtors intend the Contract and Lease Procedures to minimize the costs and administrative burden on the Debtors' estates and foster judicial economy.

II.     **The Proposed Rejection Procedures**.

5.      The Debtors seek entry of the Order authorizing and approving the following procedures with respect to rejection of Contracts and Leases (the "Rejection Procedures"):

> a. *Rejection Notice*.  The Debtors, upon not less than three (3) business days' advance notice to counsel to the Committee, will file one or more notices with the Court (each, a "Rejection Notice") with an attached schedule (the "Rejection Schedule") of those Contracts and/or Leases that the Debtors seek to reject pursuant to section 365 of the Bankruptcy Code.  The Rejection Schedule shall set forth, among other relevant information: (i) the Contracts and/or Leases to be rejected; (ii) the Debtor that is the party to such Contract and/or Lease; (iiI) the names and addresses of the counterparties to such Contracts and/or Leases (the "Rejection Counterparties"); (iv) the proposed effective date of rejection for such Contracts and/or Leases (the "Rejection Date");   (v) if a Lease, the personal property to be abandoned, if any, and an estimate of the book value of such property; and (vi) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).  The Rejection Notice may list multiple Contracts and/or Leases; *provided* that the number of Rejection Counterparties to Contracts and/or Leases listed on the Rejection Notice shall be limited to no more than 100.

3

b. ***Rejection Notice Parties***.  The Debtors will cause the Rejection Notice and Rejection Schedule to be served by electronic mail upon:  (i) each Rejection Counterparty; (ii) the Office of the United States Trustee (the "U.S. Trustee"); and (iii) counsel to the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee") (collectively, the "Rejection Notice Parties").

c. ***Individual Rejection Notice***.  The Debtors will cause an individualized Rejection Notice, substantially in the form attached hereto as **Exhibit B** (the "Individual Rejection Notice"), to be served by electronic mail or overnight delivery upon each affected Rejection Counterparty.  The Individual Rejection Notice shall not be filed with the Court; *provided* that the Debtors shall file an affidavit of service with the Court evidencing service of the Individual Rejection Notice upon the affected Rejection Counterparty within five business days after serving such Individual Rejection Notice.  The Individual Rejection Notice will set forth:  (i) the Contract(s) and/or Lease(s) to be rejected; (ii) the name of the Debtor party and Rejection Counterparty (and its counsel if known); (iii) the Rejection Date; (iv) if a Lease, the personal property to be abandoned, if any, and an estimate of the book value of such property; and (v) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).

d. ***Objections to Proposed Rejection***.  Any objections to a proposed rejection of a Contract and/or Lease must be filed with the Court and served so as to be ***actually received*** by Debtors' counsel and the Rejection Notice Parties no later than fourteen (14) days after the date that the Debtors served the Individual Rejection Notice to reject such Contract and/or Lease (the "Rejection Objection Deadline").

e. ***Amended Rejection Schedule***.  For those Contracts and/or Leases where no objection is filed and served by the Rejection Objection Deadline, the Debtors may generate an amended Rejection Schedule (the "Amended Rejection Schedule").  The Amended Rejection Schedule may be attached to a proposed order to reject the Contracts and/or Leases listed in the Amended Rejection Schedule, substantially in the form attached as **Exhibit 1** to **Exhibit B** attached hereto (the "Rejection Order") and filed with the Court.

f. ***Hearings (If Necessary)***.  If an objection is properly filed and served on the Debtors' counsel and the Rejection Notice Parties as specified above, unless such parties agree otherwise in writing, a hearing will be scheduled to consider that objection and the Debtors shall file a notice for such hearing.  Such Contract and/or Lease will only be deemed rejected upon entry by the Court of a consensual form of Rejection Order resolving the objection as between the objecting party and the

        Debtors, or, if resolution is not reached, upon further order of the Court.

    g. ***Modifications to Rejection Schedule***. The Debtors reserve the right, after consultation with the Committee, to remove any Contract and/or Lease from a Rejection Schedule or Amended Rejection Schedule at any time prior to the Rejection Date.

    h. ***Set Off and Recoupment***. If the Debtors have deposited monies with a counterparty as a security deposit or other arrangement, such counterparty may not set off or recoup or otherwise use such deposit without (i) the prior approval of the Court or (ii) agreement of the Debtors after consultation with the Committee.

    i. ***Removal of Personal Property***. In connection with the rejection of a Lease, with respect to any personal property of the Debtors located at any of the premises subject to any Rejection Notice, the Debtors shall remove such property prior to the Rejection Date. If the Debtors determine that the property at a particular location has no or *de minimis* value or the cost of removing the property exceeds the value of such property, the Debtors shall generally describe the property in the Individual Rejection Notice and their intent to abandon such property. A copy of such Individual Rejection Notice shall be provided to the U.S. Trustee and counsel to the Committee at the time it is served upon the Rejection Counterparty. Absent a timely objection, the property will be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Date. Upon abandonment, the landlord may dispose of such property without further notice or Court order and free of liability for such action.

6. The Debtors further request that counterparties to Contracts and Leases that are rejected pursuant to the Rejection Procedures be required to file a proof of claim relating to the rejection of such Contracts and Leases, if any, within 30 days after entry of the applicable Rejection Order.

**III. Proposed Assumption Procedures.**

7. The Debtors seek entry of the Order authorizing and approving the following procedures with respect to assumption of Contracts and Leases (the "<u>Assumption Procedures</u>"):

    a. ***Assumption Notice***. The Debtors, upon not less than three (3) business days' advance notice to counsel to the Committee, will file one or more notices with the Court (each, an "<u>Assumption Notice</u>")

5

with an attached schedule (the "Assumption Schedule") of those Contracts and/or Leases that the Debtors seek to assume pursuant to section 365 of the Bankruptcy Code. The Assumption Schedule shall set forth, among other relevant information: (i) the Contracts and/or Leases to be assumed; (ii) the Debtor that is the party to such Contracts and/or Leases; (iii) the names and addresses of the counterparties to such Contracts and/or Leases (the "Assumption Counterparties"); (iv) the identity of the proposed assignee of such Contract(s) and/or Lease(s) (the "Assignee"), if applicable; (v) the proposed effective date of the assumption for such Contract and/or Lease (the "Assumption Date"); (vi) the proposed cure amount, if any; (vii) a description of any material amendments to the Contract or Lease made outside the ordinary course of business; and (viii) the deadlines and procedures for filing objections to the Assumption Notice (as set forth below). The Assumption Notice may list multiple Contracts and/or Leases; *provided* that the number of Assumption Counterparties to Contracts and/or Leases listed on the Assumption Notice shall be limited to no more than 100.

b. *Assumption Notice Parties*. The Debtors will cause the Assumption Notice and Assumption Schedule to be served by electronic mail upon the following parties: (i) each Assumption Counterparty; (ii) each Assignee, if applicable; (iii) the U.S. Trustee; and (iv) counsel to the Committee (collectively, the "Assumption Notice Parties").

c. *Individual Assumption Notice*. The Debtors will cause an individualized Assumption Notice (the "Individual Assumption Notice"), substantially in the form of **Exhibit C**, to be served by electronic mail or overnight delivery upon each affected Assumption Counterparty and Assignee, as applicable. The Individual Assumption Notice shall not be filed with the Court; *provided* that the Debtors shall file an affidavit of service with the Court evidencing service of the Individual Assumption Notice upon the affected Assumption Counterparty and Assignee, if any, within five business days after serving such Individual Assumption Notice. The Individual Assumption Notice will set forth: (i) the Contract(s) and/or Lease(s) to be assumed or assumed and assigned, as applicable; (ii) the names of the Debtor party and Assumption Counterparty (and its counsel if known); (iii) the identity of the Assignee, if applicable; (iv) if a Lease, the proposed intended use for the premises; (v) if there has been a default, the Debtor's and/or Assignee's ability to provide adequate assurance of future performance; (vi) the proposed cure amount, if any; (vii) a description of any material amendments to the Contract or Lease made outside the ordinary course of business; and (vii) the

        deadlines and procedures for filing objections to the Assumption Notice (as set forth below).[2]

    d. ***Objections to Proposed Assumption***. Any objections to a proposed assumption of a Contract and/or Lease must be filed with the Court and served so as to be *actually received* by Debtors' counsel and the Assumption Notice Parties no later than fourteen (14) days after the date that the Debtors served the Individual Assumption Notice to assume such Contract and/or Lease (the "Assumption Objection Deadline").

    e. ***Amended Assumption Schedule***. For those Contracts and/or Leases where no objection is filed and served by the Assumption Objection Deadline, the Debtors may generate an amended Assumption Schedule (the "Amended Assumption Schedule"). The Amended Assumption Schedule may be attached to a proposed order to assume the Contracts and/or Leases listed in the Amended Assumption Schedule, substantially in the form of **Exhibit 1** to **Exhibit C** attached hereto (the "Assumption Order") and filed with the Court under a certificate of no objection.

    f. ***Hearings (If Necessary)***. If an objection is properly filed and served on the Debtors' counsel and the Assumption Notice Parties as specified above, unless such parties agree otherwise in writing, a hearing will be scheduled to consider that objection and the Debtors shall file a notice for such hearing. Such Contract and/or Lease will only be deemed assumed upon entry by the Court of a consensual form of Assumption Order resolving the objection as between the objecting party and the Debtors, or, if resolution is not reached, upon further order of the Court.

    g. ***Modification of Assumption Schedule***. The Debtors reserve the right, after consultation with the Committee, to remove any Contract and/or Lease from an Assumption Schedule or Amended Assumption Schedule at any time prior to the Assumption Date (including, without limitation, upon the failure of any proposed assumption and assignment to close).

8. In addition, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors request that the assignment of any Contract or Lease pursuant to the Assumption Procedures: (a) be free and clear of all liens (and any liens shall attach to the proceeds in the

---

[2] The Debtors shall serve an Assumption Counterparty with evidence of adequate assurance upon such Assumption Counterparty's written request to Debtors' counsel, with a copy to the Assumption Notice Parties.

7

same order and priority subject to all existing defenses, claims, setoffs, and rights), and any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guaranties of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, claims and encumbrances that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Contracts and/or Leases, or in respect of any taxes); and (b) constitutes a legal, valid, and effective transfer of such Contracts and/or Leases and vests the applicable Assignee with all rights, titles, and interests to the applicable Contracts and/or Leases.[3]

## Basis for Relief

**I.  The Contract and Lease Procedures Are in the Best Interests of the Debtors' Estates.**

9.  As noted, the Debtors may reject or assume a substantial number of Contracts and Leases. Establishing the Contract and Lease Procedures will streamline the administration of these chapter 11 cases and enhance the efficiency of the restructuring process by eliminating substantial legal expenses that would otherwise be incurred if multiple hearings were held on separate motions with respect to every Contract and Lease that the Debtors seek to assume or reject. The Contract and Lease Procedures are reasonable and fair to Rejection Counterparties and Assumption Counterparties because they afford parties in interest the opportunity to be heard with respect to the rejection, assumption, or assumption and assignment of the Contracts and

---

[3]  Certain of the Contracts and/or Leases may contain provisions that restrict, prohibit, condition, or limit the assumption and/or assignment of such Contract or Lease. The Debtors reserve the right to argue that such clauses are unenforceable anti-assignment or *ipso facto* clauses under section 365 of the Bankruptcy Code.

Leases (and any amendments to Contracts and/or Leases or the abandonment of property related thereto).

## II. Rejection, Assumption, Assignment, and Amendment of the Contracts and Leases Is an Exercise of the Debtors' Business Judgment.

10. Section 365(a) of the Bankruptcy Code provides that a debtor in possession "may assume or reject any executory contract or unexpired lease of the debtor" subject to the court's approval. 11 U.S.C. § 365(a). Courts generally authorize debtors to assume or reject executory contracts and unexpired leases where the debtors appropriately exercise their "business judgment." *See, e.g.*, *In re TransAmerican Nat'l Gas Corp.*, 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987).

11. The Debtors have determined, in their sound business judgment, that the rejection, assumption, or assumption and assignment (and any amendments thereto) of Contracts and/or Leases in accordance with the Contract and Lease Procedures proposed herein is and will be in the best interest of the Debtors' estates. The Debtors submit that the information provided on the Rejection Notices, Assumption Notices, Rejection Schedules, Assumption Schedules, Individual Rejection Notices, and Individual Assumption Notices will provide the Court and interested parties with sufficient information to establish that the Debtors are entitled to make such a rejection, assumption, or assumption and assignment (and any amendments thereto) in their sound business judgment.

## III. *Nunc Pro Tunc* Relief May Be Sought Where Appropriate.

12. The Rejection Procedures provide the Debtors the ability to set an effective Rejection Date earlier than the date the Court enters the respective Rejection Order. Section 365 of the Bankruptcy Code does not specifically address whether courts may order rejection to be effective retroactively. However, courts have held that bankruptcy courts may retroactively reject

executory contracts and unexpired leases based on a "balancing of the equities" standard. *See, e.g.*, *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (granting retroactive relief for contract rejection where debtors were "receiving no benefit" from the lease and the contract counterparties "had unequivocal notice of Debtors' intent to reject prior to the filing of the Motions"); *In re O'Neil Theatres, Inc.*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000) (granting retroactive relief based on the circumstances of the case); *In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that "nothing precludes a bankruptcy court, based on the equities of the case, from approving" retroactive rejection); *see also In re Joseph C. Spiess Co.*, 145 B.R. 597, 606 (Bankr. N.D. Ill. 1992) ("[A] trustee's rejection of a lease should be retroactive to the date that the trustee takes affirmative steps to reject said lease.").

13. Approval of the retroactive relief contemplated in the Rejection Procedures is warranted based on a balancing of the equities. Generally, the Debtors will only seek such relief in instances where they have vacated the premises and/or ceased receiving any benefit under the terms of the Contract or Lease prior to the earlier of the date of service of the Individual Rejection Notice or the date the Debtors gave the Rejection Counterparty notice of the Debtors' intent to terminate and/or reject the Contract or Lease. Additionally, the Individual Rejection Notice will provide a Rejection Counterparty with adequate notice of any retroactive relief sought by the Debtors. Moreover, such relief is consistent with similar relief already granted in this case, *see* [Docket No. 403], as well as in similar cases before this Court. *See, e.g.*, *In re Luca Int'l Grp., LLC*, No. 15-34221 (DRJ) (Bankr. S.D. Tex. October 5, 2015) (authorizing rejection of executory contracts *nunc pro tunc* to the date of motion); *In re HII Techs, Inc.*, No. 15-60070 (DRJ) (Bankr. S.D. Tex. Oct. 14, 2015)

(authorizing rejection of executory contracts *nunc pro tunc* to the petition date); *In re Bucccaneer Res., LLC*, No. 14-60041 (DRJ) (Bankr. S.D. Tex. June 10, 2014) (same).

**IV. Abandonment of Personal Property Is in the Best Interests of the Debtors' Estates**.

14. Bankruptcy Code section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The property to be abandoned at the premises of certain Leases would be of inconsequential value or burdensome to the Debtors' estates, and the cost of retrieving, marketing, and reselling such abandoned property would outweigh any recovery the Debtors could attain for the property. Accordingly, the abandonment of such property is in the best interests of the Debtors, their estates, and their creditors and parties in interest will have sufficient notice of such abandonment.

**V. The Debtors Should Be Permitted to Assign Contracts and Leases Free and Clear of Interests**.

15. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in such property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f).

16. Executory contracts and unexpired leases are property of a debtor's estate. To the extent the Debtors assume and assign a Contract or Lease pursuant to the Assumption Procedures, such assignment is tantamount to a sale of estate property, and may be transferred free and clear of the interests in such property held by an entity other than the estate, so long as one of the criteria under section 363(f) of the Bankruptcy Code is satisfied. The Debtors propose

11

that if a party in interest fails to timely object to an assumption and assignment consistent with the Assumption Procedures, such party shall be deemed to "consent" to such assumption and assignment within the meaning of section 363(f)(2) of the Bankruptcy Code. As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed "transfer" of Contracts or Leases free and clear of liens, claims, encumbrances, and other interests.

**VI.    The Contract and Lease Procedures Satisfy Due Process**.

17.    As a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014." Fed. R. Bankr. P. 6006(a). Bankruptcy Rule 9014 provides that: "In a contested matter . . . not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a). The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given *in light of the particular circumstances*. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as is appropriate in the particular circumstances").

18.    Under Bankruptcy Rule 6006(e), a debtor may join requests for authority to assume or reject multiple executory contracts or unexpired leases in one motion, subject to Bankruptcy Rule 6006(f). *See* Fed. R. Bankr. P. 6006(e). Bankruptcy Rule 6006(f) sets forth six requirements that motions to assume or reject multiple executory contracts or unexpired leases must satisfy. These requirements are procedural in nature. A motion to assume or reject multiple executory contracts or unexpired leases that are not between the same parties shall:

      a.      state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

      b.      list parties alphabetically and identify the corresponding contract or lease;

      c.      specify the terms, including the curing of defaults, for each requested assumption or assignment;

      d.      specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

      e.      be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

      f.      be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f).

19. The clear purpose of Bankruptcy Rule 6006(f), as amended, is to protect the due process rights of counterparties to the Contracts and Leases. Counterparties must be able to locate their Contracts and/or Leases and readily determine whether their Contracts and/or Leases are being assumed or rejected.

20. The Contract and Lease Procedures satisfy the relevant portions of Bankruptcy Rule 6006(f), including the 100-contract/lease limit set forth in subsection (6). Although the Assumption and Rejection Schedules allow for the listing of Contracts and/or Leases in excess of the 100-contract/lease limit, each Contract and/or Lease counterparty will receive an Individual Rejection or Assumption Notice limited to those Contracts and/or Leases to which such counterparty is a party, preserving the counterparty's due process rights. Further, given the substantial number of Contracts and Leases the Debtors will be seeking to reject, obtaining Court approval of each assumption or rejection would impose unnecessary administrative burdens on the Debtors and the Court, and result in costs to the Debtors' estates that may decrease the economic benefits of rejection or assumption.

21. In accordance with Bankruptcy Rule 6007(a), the Debtors will provide the U.S. Trustee, counsel to the Committee, and other parties in interest with the requisite notice and an opportunity to object to any proposed abandonment of property.

22. As a result, the Contract and Lease Procedures afford Rejection Counterparties and Assumption Counterparties and all other parties in interest their due process rights by providing notice and the opportunity to be heard. Moreover, court oversight is maintained in the event of an objection. For the foregoing reasons, the Contract and Lease Procedures should be approved, and the Debtors should be authorized to reject, assume, and assume and assign the Contracts and/or Leases consistent with terms of such procedures.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

23. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

24. All rights and defenses of the Debtors are preserved, including all rights and defenses of the Debtors with respect to a claim for damages arising as a result of a Contract or Lease rejection, including any right to assert an offset, recoupment, counterclaim, or deduction. In addition, nothing in this Order or the motion shall limit the Debtors' ability to subsequently assert that any particular Contract or Lease is terminated and is no longer an executory contract or unexpired lease, respectively.

## Notice

25. The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the official committee of

unsecured creditors; (c) counsel to Wells Fargo Bank, N.A., as administrative agent under LINN's prepetition credit facility and Berry's prepetition credit facility; (d) counsel to Wilmington Trust Company, as successor indenture trustee for LINN's 6.50% senior unsecured notes due 2019, 6.25% senior unsecured notes due 2019, 8.625% senior unsecured notes due 2020, 7.75% senior unsecured notes due 2021, and 6.5% senior unsecured notes due 2021; (e) counsel to the ad hoc group of LINN 12% second lien notes due 2020; (f) counsel to the ad hoc group of holders of Berry's 6.75% senior unsecured notes due 2020 and 6.375% senior unsecured notes due 2022; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

26.     No prior request for the relief sought in this Motion has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

| | |
|---|---|
| Houston, Texas<br>Dated:  September 30, 2016 | */s/ Patricia B. Tomasco*<br>Patricia B. Tomasco (TX Bar No. 01797600)<br>Matthew D. Cavenaugh (TX Bar No. 24062656)<br>Jennifer F. Wertz (TX Bar No. 24072822)<br>**JACKSON WALKER L.L.P.**<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Telephone:  (713) 752-4200<br>Facsimile:  (713) 752-4221<br>Email:  ptomasco@jw.com<br>  mcavenaugh@jw.com<br>  jwertz@jw.com |

- and -

Paul M. Basta, P.C. (admitted *pro hac vice*)
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Brian S. Lennon (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  paul.basta@kirkland.com
  stephen.hessler@kirkland.com
  brian.lennon@kirkland.com

- and -

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Joseph M. Graham (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  james.sprayregen@kirkland.com
  joe.graham@kirkland.com
  alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

## Certificate of Service

I certify that on September 30, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Patricia B. Tomasco*
One of Counsel