## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **LINN ENERGY, LLC**, *et al.*,[1] | § | **Case No. 16-60040** |
| | § | **Chapter 11** |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |

## OKLAHOMA STATE TREASURER'S EMERGENCY MOTION TO (1) CONSOLIDATE CLAIMS OBJECTION [DOC. 2070] WITH ADVERSARY PROCEEDING NO. 17-06008 AND (2) CONSOLIDATE ADVERSARY PROCEEDING NO. 17-06008 WITH ADVERSARY PROCEEDING NO. 16-06023

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney.**
>
> **Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**
>
> **This Motion has been set for hearing on Friday, July 14, 2017 at 3:00 p.m. at the following location: 515 Rusk Street, Courtroom 400, Houston, TX 77002**

---

[1] The debtors in these chapter 11 cases and the last four digits of each debtor's federal tax identification number are as follows: LINN Energy, LLC (7591); Berry Petroleum Company, LLC (9387); LINNCo, LLC (6623); LINN Acquisition Company, LLC (4791); LINN Energy Finance Corp. (5453); LINN Energy Holdings, LLC (6517); LINN Exploration & Production Michigan LLC (0738); LINN Exploration Midcontinent, LLC (3143); LINN Midstream, LLC (9707); LINN Midwest Energy LLC (1712); LINN Operating, Inc. (3530); Mid-Continent I, LLC (1686); Mid-Continent Holdings II LLC (7129). These debtors shall be collectively referred to as the "***Debtors***." The Treasurer will refer to individual debtors when the distinction is relevant.

This Motion filed by the Oklahoma State Treasurer (the "*Treasurer*") seeks relief on an expedited basis. A hearing on the Reorganized Linn Debtor's Twenty-Seventh Omnibus Objection to Certain Proofs of Claim (No Liability Claims) [Doc. 2070] (the "*Claims Objection*") is currently set for July 19, 2017, at 2:00 p.m. On July 6, 2017, the Treasurer opened Adversary No. 17-06008 (the "*Treasurer's Adversary*," and together with the Claims Objection, the "*Treasurer's Matters*") and filed its Oklahoma State Treasurer's Original Complaint (the "*Treasurer's Complaint*") against Linn Operating, Inc. (the "*Defendant*"). The Claims Objection and the Treasurer's Adversary involve identical factual and legal questions. Consequently, there is a risk of inconsistent adjudications of common factual or legal questions if the Claims Objection and the Treasurer's Adversary are not consolidated prior to the July 19 hearing. Prejudice and confusion will result if the Court proceeds with that hearing on the Claims Objection before this Motion is heard and ruled upon. Furthermore, consolidation of the Claims Objection and the Treasurer's Adversary will promote judicial efficiency and economy and prevent duplication of efforts

The Treasurer respectfully requests that this Court enter an order as follows: (1) consolidating the Claims Objection, to the extent it relates to the Treasurer's claims against the Debtors, with the Treasurer's Adversary; (2) consolidating the Treasurer's Adversary with the Adversary Proceeding filed by the Texas Comptroller of Public Accounts (the "*Comptroller*") against the Defendant, Adversary No. 16-06023 (the "*Comptroller's Adversary*"); and (3) vacating the hearing on the Claims Objection set for July 19, 2017, at 2:00 p.m. The Treasurer has consulted with the Comptroller, and the Comptroller consents to consolidation of the Treasurer's Adversary and the Comptroller's Adversary. In support of this Motion, the Treasurer states as follows:

## JURISDICTION AND VENUE

**1.**    This Court has jurisdiction over these matters under 28 U.S.C. §§ 1334 and 157.

**2.**    This is a core proceeding within the meaning of 28 U.S.C. §§ 157 (b)(2)(A).

**3.**    Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

**4.**    Oklahoma implemented its sovereign power over unclaimed property by enacting the Uniform Unclaimed Property Act, 60 O.S. § 651, *et seq*. (the "***Oklahoma UPL***").[2] The Treasurer is responsible for administering the Oklahoma UPL.

**5.**    Under the Oklahoma UPL and in this Motion, the term "***Mineral Proceeds***" "includes (a) all obligations to pay mineral proceeds resulting from the production and sale of minerals, including net revenue interest, royalties, overriding royalties, production payments, and payments under joint operating agreements, and (b) all obligations for the acquisition and retention of a mineral lease, including bonuses, delay rentals, shut-in royalties, and minimum royalties." 60 O.S. § 651(12).

**6.**    On May 11, 2016, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

**7.**    On May 11, 2016, the Debtors also filed the Emergency Motion for Entry of Interim and Final Order Authorizing Payment of Mineral Payments and Working Interest Disbursements and Granting Related Relief [Doc. 10] (the "***Mineral Payments Motion***"). A true and correct copy of the Mineral Payments Motion is attached as **Exhibit 1** and incorporated by reference.

---

[2]  The complete text of the Oklahoma UPL can be accessed on the Oklahoma State Courts Network website: http://www.oscn.net/applications/oscn/Index.asp?ftdb=STOKST60&level=1.

**8.** By the Mineral Payments Motion, the Debtors sought "to pay or apply in the ordinary course of business, any and all amounts owed to mineral payees and working interest owners in the ordinary course of business, whether such obligations were incurred prepetition or will be incurred postpetition. . . ." Mineral Payments Motion at 2.

**9.** According to the Mineral Payments Motion, "[f]ailure to pay Mineral Payments could expose the Debtors to such enforcement actions and as well as actions by the owners of the Interest Burdens for conversion. . . ." Mineral Payments Motion at 5.

**10.** In the Mineral Payments Motion, the Debtors described in painstaking detail exactly why certain property held by the Defendant was not property of any bankruptcy estate. Upon information and belief, this non-bankruptcy estate property includes all amounts that are at issue in the Claims Objection, the Treasurer's Adversary, and the Comptroller's Adversary.

**11.** On May 11, 2016, the Debtors filed the Declaration of Arden L. Walker, Jr. in Support of Chapter 11 Petitions and First Day Motions [Doc. 19] (the "***Walker Declaration***") "to assist this Court and parties in interest in understanding the Debtors' businesses and the circumstances that compelled the commencement of these chapter 11 cases—and to provide the evidentiary support" for, *inter alia*, the Mineral Payments Motion. Walker Declaration at 1-2. A true and correct copy of the Walker Declaration is attached as **Exhibit 2** and incorporated by reference.

**12.** According to Exhibit A to the Walker Declaration, "[t]he Debtors estimate that, as of the Petition Date, there are approximately $92 million in as-yet unpaid Mineral Payments that are due to be paid following the Petition Date." Walker Declaration, Exhibit A at 8. A footnote explains that "[t]his amount includes approximately $55 million in 'suspended funds' that are due and owing to certain Mineral Payees but are otherwise unpayable for a variety of reasons,

including incorrect contact information, unmarketable title, and ongoing disputes over ownership of the underlying interest." *Id.*

**13.**    Furthermore, the declarant states:

> As an initial matter, I am advised that the Mineral Payments and Working Interests Disbursements are [sic] the Debtors' property **but instead are held in trust for Interest Burden owners and Non-Op Working Interest owners**. I believe that failure to pay the Mineral Payments and Working Interest Disbursements could materially jeopardize the Debtors' production ability and reliability. Failing to pay the Mineral Payments and Working Interest Disbursements would have a devastating impact on the Debtors' operations and would undoubtedly force the Debtors to spend significant time and resources resolving disputes with the very parties on whom they depend.

 (Emphasis added.) Walker Declaration, Exhibit A at 9.

**14.**    On May 11, 2016, the Debtors also filed the Declaration of James A. Mesterharm in Support of Certain of the Debtors' First Day Relief [Doc. 20] (the "*Mesterharm Declaration*"). A true and correct copy of the Mesterharm Declaration is attached as **Exhibit 3** and incorporated by reference. The Mesterharm Declaration explains that, "[a]s an operator with agency agreements, Linn Operating tracks and manages third-party Mineral Payments, Working Interest Payables, and Joint Interests Billings. As such, Linn Operating receives and processes substantially all Receivables and Payables of Berry and the other LINN Debtors in the first instance through the Concentration Account." Mesterharm Declaration at 7.

**15.**    Exhibit B to the Mesterharm Declaration contains a list of thirty active bank accounts maintained by the Debtors. Mesterharm Declaration, Exhibit B at 1-3. This list includes a Suspense Funds Account (the "*Suspense Funds Account*") maintained by the Defendant at First Interstate Bank.

16.     On May 13, 2016, the Court entered its Interim Order (A) Authorizing Payment of Mineral Payments and Working Interest Disbursements and (B) Granting Related Relief [Doc. 81] granting the Mineral Payments Motion on an interim basis.

17.     On June 27, 2016, the Court entered its Final Order (A) Authorizing Payment of Mineral Payments and Working Interest Disbursements and (B) Granting Related Relief [Doc. 402] granting the Mineral Payments Motion.

18.     On July 1, 2016, the Defendant filed its Statement of Financial Affairs [Doc. 538] (the "**SOFA**"), in which it admitted that on the petition date it was holding mineral proceeds in suspense (the "**Suspended Funds**") in the amount of $54,078,147.72. The Defendant described the Suspended Funds as property it "does not own," and "held for another," and includes "any property borrowed from, being stored for, or held in trust" that "another entity owns." SOFA at 799. A true and correct copy of the relevant page from the SOFA is attached as **<u>Exhibit 4</u>** and incorporated by reference.

19.     The Suspended Funds include the unclaimed property that is the subject of the Claims Objection, the Treasurer's Adversary, and the Comptroller's Adversary.

20.     The Defendant represented in its SOFA that it would release the Admitted Unclaimed Property to its rightful owner or custodian:

> Additionally, as discussed in the Emergency Motion for Entry of Interim and Final Orders Authorizing Payment of Mineral Payments and Working Interest Disbursement and Granting Related Relief [Docket No. 10] the "Mineral Payment Motion"), the Debtors maintain certain "Suspended Funds." The Suspended Funds represent amounts on account of Mineral Payments and Working Interest Disbursements (each as defined in the Mineral Payment Motion) that are due but are otherwise unpayable for a variety of reasons, including incorrect contact information, unmarketable title, and ongoing disputes over ownership of the underlying interest. **Subject to applicable laws, when and to the extent the Debtors are provided evidence or sufficient notice that the issue preventing**

> **payment of the Suspended Funds to the correct party is resolved, the Debtors
> release the applicable Suspended Funds in question**.

SOFA at 10. (Emphasis added.) A true and correct copy of the relevant page from the SOFA is

attached as **Exhibit 5** and incorporated by reference.

21.     On July 13, 2016, The Defendant filed an annual unclaimed property report for

report year 2016 (the "***Texas Report***") as required by Texas law, identifying $1,583,991.96 in

unclaimed property it was holding (the "***Texas Unclaimed Property***"). *See* Texas Property Code

§ 74.101(a); the Texas Property Code, Title 6, Chapters 72-76 and other applicable Texas laws

(the "***Texas UPL***"). The Defendant, however, failed to deliver the property to the Comptroller as

required by Texas Property Code § 74.301(a).

22.     On August 29, 2016, the Treasurer filed proofs of claim against Linn Operating,

Inc.  [Claim Number 410, Prime Claim 2142], Linn Energy Holdings, LLC [Claim Number 26,

Prime Claim 2387], and Linn Energy, LLC [Claim Number 1757, Prime Claim 2440]

(collectively, the "***Claims***"). The amounts of the Claims were unknown at the time of filing.

23.     In November 2016, The Defendant filed a report (the "***Oklahoma Report***")

disclosing $965,216.72 in unclaimed property in the Debtors' possession (the "***Oklahoma***

***Unclaimed Property***" and collectively with the Texas Unclaimed Property, the "***Admitted***

***Unclaimed Property***"). *See generally*, 60 O.S. § 661 (requiring the holder of unclaimed property

to file a report with the Treasurer). A copy of the Oklahoma Report is attached as **Exhibit 6**.[3]

The Defendant, however, failed to pay or deliver the Oklahoma Unclaimed Property to The

Treasurer as required by the Uniform Unclaimed Property Act, 60 O.S. § 651, *et seq.* (the

---

[3] To get all the Report's columns to fit on one page so the Report could be attached as an exhibit, the
following columns were deleted from the Report: Owner2 Relationship, Owner2 Type, Owner2
Lastname, Owner2 Firstname, Owner2 Address line 1, Owner2 Address line 2, Owner2 City, Owner2
State, Owner2 Zipcode.

"*Oklahoma UPL*"). *See* 60 O.S. § 663(A) (requiring the person who files a report to pay or deliver all abandoned property to the Treasurer at the same time).

24.     Upon information and belief, the Oklahoma Unclaimed Property consists entirely of Mineral Proceeds.

25.     On December 5, 2016, the Comptroller filed the Comptroller's Adversary. The Comptroller filed its First Amended Complaint for Delivery of Unclaimed Property and Related Relief (the "*Comptroller's Complaint*") on May 5, 2017, seeking entry of judgment directing the Defendant to deliver the Texas Unclaimed Property to the Comptroller and directing the Defendant to comply with all provisions of the Texas UPL, among other relief. A true and correct copy of the Comptroller's Complaint is attached as **Exhibit 11**.

26.     On January 26, 2017, the Debtors, including the Defendant, filed the Amended Joint Chapter 11 Plan of Reorganization of Linn Energy, LLC and its Debtor Affiliates Other Than Linn Acquisition Company, LLC and Berry Petroleum Company, LLC [Doc. 1624] (the "*Plan*"). A true and correct copy of the Plan is attached as **Exhibit 7** and incorporated by reference. According to the Plan:

> Notwithstanding anything to the contrary herein, nothing in the Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units or other governmental agencies.

Plan at 57.

27.     On January 27, 2017, the Court entered the Order Confirming (I) Amended Joint Chapter 11 Plan of Reorganization of Linn Energy, LLC and its Debtor Affiliates Other Than Linn Acquisition Company, LLC and Berry Petroleum Company, LLC and (II) Amended Joint Chapter 11 Plan of Reorganization of Linn Acquisition Company, LLC and Berry Petroleum Company, LLC [Doc. 1629] (the "*Confirmation Order*"). According to the Confirmation Order:

Nothing in this Confirmation Order or either Plan discharges, releases, precludes, or enjoins: (a) any liability to any Governmental Unit that is not a Claim; (b) any Claim of a Governmental Unit arising on or after the Effective Date of the LINN Plan or the Effective Date of the Berry Plan; (c) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the applicable Effective Date; or (d) any liability to a Governmental Unit on the part of any Entity other than the Debtors or Reorganized Debtors. Nor shall anything in this Confirmation Order or either Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Subject to section 553 of the Bankruptcy Code, nothing in this Confirmation Order or either Plan shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in this Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order or either Plan or to adjudicate any defense asserted under this Confirmation Order or the Plan.

Confirmation Order at 107. A true and correct copy of the Confirmation Order is attached as **Exhibit 8** and incorporated by reference.

28.     The Confirmation Order further provides that "[n]otwithstanding anything to the contrary in either Plan or the Confirmation Order, the Reorganized Debtors shall operate their business, properties, and assets in compliance with any applicable federal, state, or local laws and regulations." Confirmation Order at 129.

29.     Because the Texas UPL and Oklahoma UPL are a sovereign exercise of Texas' and Oklahoma's regulatory power over property, nothing in the Plan or Confirmation Order affects the Debtors' obligations or the States' rights under the Texas UPL or Oklahoma UPL.

30.     On May 25, 2017, the Debtors, including the Defendant, filed the Claims Objection, alleging that there were "no amounts outstanding" with respect to the Oklahoma Unclaimed Property. The Debtors, including the Defendant, further alleged that state unclaimed property laws are preempted by the Bankruptcy Code. A true and correct copy of the Twenty-Seventh Omnibus Objection is attached as **Exhibit 9** and incorporated by reference.

31.     On July 6, 2017, the Treasurer filed the Treasurer's Adversary. The Oklahoma State Treasurer's Original Complaint (the "***Treasurer's Complaint***") requests the following relief: (1) declaratory judgment that the Defendant must comply with Oklahoma laws; (2) declaratory judgment that certain unclaimed property was not property of the Defendant's bankruptcy estate and is not the Defendant's property now; (3) recovery of the unclaimed property; (4) enforcement of the Confirmation Order; (5) judicial estoppel preventing the Defendant from arguing positions that are plainly inconsistent with its prior positions. A true and correct copy of the Treasurer's Complaint is attached as **Exhibit 10**.

## RELIEF REQUESTED

32.     By this motion, the Treasurer respectfully requests that this Court enter an order as follows: (1) consolidating the Claims Objection, to the extent the Claims Objection relates to the Treasurer's claims against the Debtors, with the Adversary Proceeding filed by the Treasurer against Linn Operating, Inc.; and (2) consolidating the Treasurer's Adversary with the Comptroller's Adversary.

## BASIS FOR RELIEF

33.     Federal Rule of Civil Procedure ("***FRCP***") 42, applicable in this proceeding pursuant to Federal Rule of Bankruptcy Procedure ("***FRBP***") 7042(a),[4] states that if actions before the court involve common questions of law or fact, the court may consolidate the actions. "Under the Federal rules, district courts are vested with broad discretionary authority to consolidate cases in the interests of efficiency and judicial economy." *Pittman v. Memorial*

---

[4] FRCP 42 applies in adversary proceedings, whereas a claim objection is a contested matter, governed by FRBP 3007 and 9014. Pursuant to 9014(c), however, "unless the court directs otherwise, the following rules shall apply [in contested matters] . . . 7042."

*Herman Healthcare & Mem. Herman Hosp. Sys.*, 124 F. Supp.2d 446, 449 (S.D. Tex. 2000); *see also Gentry v. Smith*, 487 F.2d 571 (5th Cir. 1973).

**34.**     "Once the moving party establishes the presence of common questions of law and fact, the court must weigh the savings and effort that consolidation would promote against any inconvenience, delay, or expense that consolidation would cause to the parties and the Court." *Sachs Elec. Co. v. Bridge Info. Sys. (In re Bridge Info. Sys.)*, 288 B.R. 548, 553 (Bankr. E.D. Mo. 2001).

**The Claims Objection and the Treasurer's Adversary**

**35.**     Common questions of law and fact exist in the Claims Objection and the Treasurer's Adversary. In each action, the Treasurer asks this Court to determine the following legal questions:

**(a)**     Whether Oklahoma's sovereign power of escheat entitles the Treasurer to the Oklahoma Unclaimed Property;

**(b)**     Whether the Oklahoma Unclaimed Property is property of the estate pursuant to 11 U.S.C. § 541;

**(c)**     Whether the Oklahoma Unclaimed Property is property of the estate pursuant to Supreme Court precedent;

**(d)**      Whether the Oklahoma Unclaimed Property is expressly excluded from the bankruptcy estate under 11 U.S.C. § 541(b)(4)(B);

**(e)**     Whether the Oklahoma Unclaimed Property is expressly excluded from the bankruptcy estate under 11 U.S.C. § 541(d);

**(f)**     Whether 28 U.S.C. § 959(b) requires the Defendant to comply with the Oklahoma UPL;

**(g)**     Whether 28 U.S.C. § 959(b) requires the Defendant to comply with the Production Revenue Standards Act, 52 O.S. § 570 *et seq*. (the "***Production Act***");

**(h)**     Whether the Oklahoma Unclaimed Property may become property of a mere holder;

**(i)**     Whether the Defendant has a duty to deliver the Oklahoma Unclaimed Property to the Treasurer pursuant to the Oklahoma UPL;

**(j)**     Whether the Defendant may lawfully distribute the Oklahoma Unclaimed Property to the Debtors' creditors;

**(k)**     Whether the Bankruptcy Code preempts the Oklahoma UPL;

**(l)**     Other common legal questions.

**36.**     In the Claims Objection and the Treasurer's Adversary, the Treasurer asks this Court to determine the following factual questions:

**(a)**     Whether the Oklahoma Unclaimed Property was deemed abandoned prior to the Debtors' petition date;

**(b)**     Whether the Oklahoma Unclaimed Property consists entirely of Mineral Proceeds;

**(c)**     Whether the Suspended Funds are in the Suspense Funds Account;

**(d)**     Whether the Defendant is required to comply with the Oklahoma UPL under the terms of the Plan and Confirmation Order;

**(e)**     Whether the Defendant is required to comply with the Production Act under the terms of the Plan and Confirmation Order;

**(f)**     Whether the Defendant represented in its SOFA that it would release the Oklahoma Unclaimed Property pursuant to the Oklahoma UPL; and

(g)     Other common factual questions.

37.     As shown above, the Claims Objection and the Treasurer's Adversary are based on common questions of law and fact. The Treasurer need only identify one common question of law or fact to justify consolidation pursuant to FRCP 42. The Treasurer has identified several common questions of law and fact in the Treasurer's Matters, so this Court should enter an order consolidating the Claims Objection and the Treasurer's Adversary.

**The Treasurer's Adversary and the Comptroller's Adversary**

38.     Common questions of law and fact exist in the Treasurer's Adversary and the Comptroller's Adversary. Both complaints seek to enforce state sovereign powers of escheat. Specifically, the doctrine of *bona vacantina*. The Treasurer and the Texas Comptroller rely on similar law, including Supreme Court precedent, the United States Code, and similar state statutes regarding unclaimed property. The Treasurer and the Texas Comptroller each ask this Court to determine the following legal questions:

(a)     Whether Texas and Oklahoma's sovereign power of escheat entitles the Texas Comptroller and the Treasurer to the Admitted Unclaimed Property. Comptroller's Complaint, ¶16-20; Treasurer's Complaint, ¶ 38-63;

(b)     Whether the Admitted Unclaimed Property is property of the estate pursuant to 11 U.S.C. § 541. Comptroller's Complaint, ¶56-66; Treasurer's Complaint, ¶ 38-63;

(c)     Whether the Admitted Unclaimed Property is property of the estate pursuant to Supreme Court precedent. Comptroller's Complaint, ¶ 56-66; Treasurer's Complaint, ¶ 38-63;

**(d)**     Whether the Admitted Unclaimed Property may become property of a mere holder of unclaimed property. Comptroller's Complaint, ¶ 58-66; Treasurer's Complaint, ¶ 38-63;

**(e)**     Whether the Defendant has a duty to deliver the Admitted Unclaimed Property pursuant to state unclaimed property laws. Comptroller's Complaint, ¶ 49-55; Treasurer's Complaint, ¶ 38-63;

**(f)**     Whether the Defendant may lawfully distribute non-estate property to creditors. Comptroller's Complaint, ¶ 56-66; Treasurer's Complaint, ¶ 38-63;

**(g)**     Whether the Bankruptcy Code preempts state unclaimed property laws. Comptroller's Complaint, ¶ 10-25; Treasurer's Complaint, ¶ 38-63;

**(h)**     Whether the Defendant is required to obey state unclaimed property laws, pursuant 28 U.S.C. § 959(b). Comptroller's Complaint, ¶ 72-83; Treasurer's Complaint, ¶ 38-63;

**(i)**     Whether interest is appropriate on judgments entered against the Defendant. Comptroller's Complaint, ¶ 88-92; Treasurer's Complaint, ¶ 75, 95, 108, 118;

**(j)**     Whether the Defendant is subject to state unclaimed property penalties for their refusal to deliver the Admitted Unclaimed Property. Comptroller's Complaint, ¶ 94; Treasurer's Complaint, ¶ 75, 95, 108, 118; and

**(k)**     Other common legal questions.

**39.**     Moreover, the Defendant makes identical arguments in prosecuting the Claim Objection and defending the Comptroller's Adversary, namely, that the Bankruptcy Code preempts state unclaimed property laws. Ultimately, the Treasurer's Adversary and the Comptroller's Adversary ask this Court to answer the same questions: whether the Debtors have

any equitable interest in the Admitted Unclaimed Property, and whether the Defendant may distribute non-estate property to the Debtors' creditors.

40.     Common questions of fact exist in the Treasurer's Adversary and the Comptroller's Adversary. The Treasurer and the Comptroller ask this Court to determine the following factual[5] questions:

(a)     Whether the Defendant represented in their SOFA that they would release the Admitted Unclaimed Property pursuant to applicable state unclaimed property laws. Comptroller's Complaint, ¶ 80; Treasurer's Complaint, ¶ 28-29;

(b)     Whether the Plan requires compliance with state regulatory activities. Comptroller's Complaint, ¶ 84-87; Treasurer's Complaint, ¶ 32;

(c)     Whether the Confirmation Order requires compliance with state regulatory activities. Comptroller's Complaint, ¶ 84-87; Treasurer's Complaint, ¶ 33-35;

(d)     Why the Defendant filed the unclaimed property reports but failed to deliver the Admitted Unclaimed Property. Comptroller's Complaint, ¶ 30-32; Treasurer's Complaint, ¶ 30-31; and

(e)     Other common factual questions.

41.     As shown above, the Treasurer's Adversary and the Comptroller's Adversary are based on common questions of law and fact. The Treasurer need only identify one common question of law or fact to justify consolidation pursuant to FRCP 42. The Treasurer has identified several common questions of law and fact in the Treasurer's Adversary and the Comptroller's Adversary, so this Court should enter an order consolidating the Treasurer's Adversary and the Comptroller's Adversary.

---

[5] Some are mixed factual and legal questions, including those requiring this Court to interpret its own orders.

**Consolidation is Appropriate Under 5th Circuit Precedent**

42.     To determine whether consolidation is appropriate, courts in the Fifth Circuit consider whether:

> the actions are pending before the same court; the actions involve a common party; any risk of prejudice or confusion will result from consolidation; any risk of inconsistent adjudications of common factual or legal questions will result if the matters are tried separately; consolidation will reduce the time and cost of trying the cases separately; and the cases are at the same stage of preparation for trial.

*Hampton v. Mar. Ass'n Int'l Longshoreman Ass'n Pension Ret. Welfare & Vacation Funds*, 2017 U.S. Dist. LEXIS 62726 (S.D. Tex. April 25, 2017) (the "***Consolidation Factors***").

**The Claims Objection and the Treasurer's Adversary**

43.     A majority of the Consolidation Factors weigh in favor of consolidating the Treasurer's Matters.

44.     The Treasurer's Matters are pending before this Court.

45.     The Treasurer and the Defendant are common parties to the Treasurer's Matters.

46.     There is little risk of prejudice or confusion in consolidating the Treasurer's Matters. In fact, the Defendant will not suffer any substantive prejudice as a result of consolidation. When the court consolidates actions, the actions maintain their separate identity. *See Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1532 (5th Cir. 1993) (citing *Johnson v. Manhattan R. Co.*, 289 U.S. 479, 496-97 (1933) ("consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another."); *see also Hampton v. Mar. Ass'n Int'l Longshoreman Ass'n Pension Ret. Welfare & Vacation Funds*, 2017 U.S. Dist. LEXIS 62726 (S.D. Tex. April 25, 2017) ("consolidation does not merge

the suits into a single action or change the rights of the parties; rather, consolidation is intended only as a procedural device used to promote judicial efficiency and economy and the actions maintain their separate identities.") (internal quotation marks and citations omitted)).

47.    There is significant risk of inconsistent adjudications of common factual or legal questions if the Treasurer's Matters are not consolidated. As outlined above, the matters involve nearly identical common factual and legal questions.

48.    Consolidating the Treasurer's Matters will greatly reduce the time and cost of trying them separately, as this Court can resolve the numerous common factual and legal issues in one matter, rather than two duplicative matters.

49.    Finally, while the Claim Objection is currently set for hearing on July 19, 2017, and the Treasurer recently filed the Treasurer's Adversary, all of the other Consolidation Factors weigh heavily in favor of consolidation. The Treasurer would have filed the Treasurer's Adversary sooner had the Treasurer known before May 25, 2017, that the Defendant did not intend to honor its representation in the SOFA that it would release the applicable Suspended Funds subject to applicable laws, including the Oklahoma UPL. Moreover, the Treasurer would have filed the Treasurer's Adversary sooner had the Treasurer known before May 25, 2017, that the Defendant did not intend to honor its representation in the Plan that nothing in the Plan or Confirmation Order was intended to affect Oklahoma's regulatory activities. Finally, the Treasurer would have filed the Treasurer's Adversary sooner had the Treasurer known before May 25, 2017, that the Defendant intended to violate the Confirmation Order's requirement that the Debtors comply with all applicable state laws and regulations.

50.    Accordingly, the Treasurer has established that the savings and effort of consolidation outweigh any inconvenience, delay, or expense that consolidation would cause to

the parties and this Court. Thus, this Court should enter an order consolidating the Treasurer's Matters.

**The Treasurer's Adversary and the Comptroller's Adversary**

51.   A majority of the Consolidation Factors weigh in favor of consolidating the Treasurer's Matters and the Comptroller's Adversary.

52.   The Treasurer's Matters and the Comptroller's Adversary are pending before this Court.

53.   The Defendant is a common party to the Treasurer's Matters and the Comptroller's Adversary.

54.   There is little risk of prejudice or confusion in consolidating the Treasurer's Matters and the Comptroller's Adversary. As mentioned previously, the Defendant will not suffer any substantive prejudice as a result of consolidation. *See Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1532 (5th Cir. 1993) (citing *Johnson v. Manhattan R. Co.*, 289 U.S. 479, 496-97 (1933) ("consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another."); *see also Hampton v. Mar. Ass'n Int'l Longshoreman Ass'n Pension Ret. Welfare & Vacation Funds*, 2017 U.S. Dist. LEXIS 62726 (S.D. Tex. April 25, 2017) ("consolidation does not merge the suits into a single action or change the rights of the parties; rather, consolidation is intended only as a procedural device used to promote judicial efficiency and economy and the actions maintain their separate identities.") (internal quotation marks and citations omitted)).

55.     Admittedly, some differences exist between the Texas UPL and Oklahoma UPL. These differences, however, are ancillary to the plethora of common questions of fact and law that are fundamental to the Treasurer's Matters and the Comptroller's Adversary.

56.     If the Treasurer's Matters and Comptroller's Adversary are tried separately, there is significant risk of inconsistent adjudications of common factual or legal questions. As outlined above, numerous common factual and legal questions exist.

57.     Consolidating the Treasurer's Matters and the Comptroller's Adversary will greatly reduce the time and cost of trying these proceedings separately, as this Court can resolve the numerous common factual and legal issues in one proceeding, rather than two duplicative proceedings.

58.     Finally, while there is a pending motion for summary judgment in the Comptroller's Adversary and the Treasurers recently filed the Treasurer's Adversary, all of the other Consolidation Factors weigh heavily in favor of consolidation. The Treasurer would have filed the Treasurer's Adversary sooner had the Treasurer known before May 25, 2017, that the Defendant did not intend to honor their representation in the SOFA that they would release the applicable Suspended Funds subject to applicable laws, including the Oklahoma UPL. Moreover, the Treasurer would have filed the Treasurer's Adversary sooner had the Treasurer known before May 25, 2017, that the Defendant did not intend to honor their representation in the Plan that nothing in the Plan or Confirmation Order was intended to affect Oklahoma's regulatory activities. Finally, the Treasurer would have filed the Treasurer's Adversary sooner had the Treasurer known before May 25, 2017, that the Defendant intended to violate the Confirmation Order's requirement that the Defendant comply with all applicable state laws and regulations.

59.     Accordingly, the Treasurer has established that the savings and effort of consolidation outweigh any inconvenience, delay, or expense that consolidation would cause to the parties and this Court. Thus, this Court should enter an order consolidating the Treasurer's Matters and the Comptroller's Adversary.

60.     The Treasurer has consulted with the Defendant and the Defendant objects to any consolidation.

61.     The Treasurer has consulted with the Texas Comptroller and the Texas Comptroller consents to consolidation of the Treasurer's Matters and the Comptroller's Adversary.

WHEREFORE, The Treasurer respectfully requests that this Court enter an order as follows: (1) consolidating the Claims Objection, to the extent the Claims Objection relates to the Treasurer's claims against the Debtors, with the Adversary Proceeding filed by the Treasurer against Linn Operating, Inc.; (2) consolidating the Treasurer's Adversary with the Comptroller's Adversary; (3) vacating the hearing on the Claims Objection set for July 19, 2017, at 2:00 p.m.; and (4) for any further relief this Court deems just and proper.

                                     Respectfully submitted,

                              By: */s/ Jacob Sparks*
                                     Jacob Sparks
                                     Texas Bar No. 24066126
                                     **SPENCER FANE LLP**
                                     10100 North Central Expressway, Suite 225
                                     Dallas, Texas 75231-4456
                                     Office: 214.750.3610
                                     Direct: 214.750.3624
                                     Fax:    214.750.3612
                                     Email: JSparks@SpencerFane.com

                                     ***Attorneys for Oklahoma State Treasurer***

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 7, 2017, counsel for the Texas Comptroller and counsel for the Oklahoma Treasurer conferred about the substance of the foregoing Motion. The parties agree that the Treasurer's Adversary should be consolidated with the Comptroller's Adversary.

By: /s/ Jay W. Hurst
JAY W. HURST
Texas Bar No. 10315620
Southern District of Texas Bar No. 9022
Assistant Attorney General
Bankruptcy & Collections Division MC 008
P. O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 475-4861
Facsimile: (512) 936-1409
jay.hurst@oag.texas.gov

*Attorneys for the Texas Comptroller of Public Accounts*

By: /s/ Jacob Sparks
Jacob Sparks
Texas Bar No. 24066126
**SPENCER FANE LLP**
10100 North Central Expressway, Suite 225
Dallas, Texas 75231-4456
Office: 214.750.3610
Direct: 214.750.3624
Fax: 214.750.3612
Email: JSparks@SpencerFane.com

*Attorneys for Oklahoma State Treasurer*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2017, I filed the foregoing document using the Court's electronic filing system. Pursuant to Bankruptcy Local Rule 5005-1(b): "The notice of electronic filing that is automatically generated by the Court's electronic filing system constitutes service of the document on those registered as filing users of the system."

By: /s/ Jacob Sparks
Jacob Sparks