

ENTERED
11/13/2017

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| IN RE: § | |
| § | Case No. 16-60040 |
| **LINN ENERGY, LLC,** *et al.*,  § | Chapter 11 |
| § | (Jointly Administered) |
| Debtors.  § | David R. Jones |

### MEMORANDUM OPINION
(Docket No. 1853)

The final question presented in connection with the Court's confirmation of two complex and heavily negotiated plans in these jointly administered cases is relatively simple – are the Debtors' secured lenders entitled to payment of postpetition default interest?  The Debtors' secured lenders assert that the terms of the two confirmed plans unambiguously allow for the payment of postpetition default interest as provided for in the relevant credit agreements between the parties.  The Debtors and two groups of noteholders assert that the plans expressly proscribe the payment of postpetition default interest.  After a detailed review of the confirmed plans and the Court's confirmation order as well as the careful consideration of the arguments and authorities submitted by the parties, the Court determines that the secured lenders are not entitled to payment of postpetition default interest.  For the reasons set forth below, a separate order denying Wells Fargo's motion for payment of postpetition default interest will issue.

### Relevant Background

1. On May 11, 2016, Linn Energy, LLC and fourteen affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code.[1]  On May 12, 2016, this Court granted the Debtors' emergency motion for joint administration [Docket No. 45].

2. During the case, the Debtors were effectively divided into two distinct business groups—the "Linn Debtors" and the "Berry Debtors".  The "Linn Debtors" refer to Linn Energy, LLC, LinnCo, LLC, Linn Energy Finance Corp, Linn Energy Holdings, Linn Exploration &

---

[1] The Debtors in these chapter 11 cases are: Linn Energy, LLC (16-60040); LinnCo, LLC (16-60042); Linn Energy Finance Corp. (16-60044); Linn Energy Holdings, LLC (16-60039); Linn Exploration & Production Michigan LLC (16-60045); Linn Exploration Midcontinent, LLC (16-60046); Linn Midstream, LLC (16-60047); Linn Midwest Energy LLC (16-60048); Linn Operating, Inc. (16-60049); Mid-Continent I, LLC (16-60050); Mid-Continent II, LLC (16-60051); Mid-Continent Holdings I, LLC (16-60052); Mid-Continent Holdings II, LLC. (16-60053); Berry Petroleum Company, LLC (16-60041); and Linn Acquisition Company, LLC (16-60043).

Production Michigan LLC, Linn Exploration Midcontinent, LLC, Linn Midstream, LLC, Linn Midwest Energy LLC, Linn Operating, Inc., Mid-Continent I, LLC, Mid-Continent II, LLC, Mid-Continent Holdings I, LLC, and Mid-Continent Holdings II, LLC. The "Berry Debtors" refer to Berry Petroleum Company, LLC and Linn Acquisition Company, LLC. Each group filed a separate plan and disclosure statement.[2]

3. Wells Fargo Bank, National Association ("Wells Fargo") is the administrative agent under the Sixth Amended and Restated Credit Agreement dated as of April 24, 2013 (the "LINN Credit Agreement") among Linn Energy, LLC, Wells Fargo and the other members of the lending group specified therein (the "Linn Lenders"). Wells Fargo is also the administrative agent under the Second Amended and Restated Credit Agreement dated as of November 15, 2010 (the "Berry Credit Agreement") among Berry Petroleum Company, LLC, Wells Fargo and the other members of the lending group specified therein (the "Berry Lenders").

4. On September 15, 2016, Wells Fargo filed its Master Proof of Claim of (i) Wells Fargo Bank, National Association, Individually and as Administrative Agent under the First Lien Credit Agreements, and (ii) the Other First Lien Secured Parties in the bankruptcy cases of Linn Energy LLC, [Case No. 16-60040, Claim No. 5295], LinnCo, LLC [Case No. 16-60042, Claim No. 5433], Linn Energy Finance Corp. [Case No. 16-60044, Claim No. 5306] and Linn Acquisition Company, LLC [Case No. 16-60043, Claim No. 5317] (jointly hereafter referred to as the "Master Proof of Claim").

5. On January 26, 2017, the Linn Debtors filed their Amended Joint Chapter 11 Plan of Reorganization of Linn Energy, LLC and its Debtor Affiliates other than Linn Acquisition Company, LLC and Berry Petroleum Company, LLC [Docket No. 1624] (the "Linn Plan") and the Berry Debtors filed their Amended Joint Chapter 11 Plan of Reorganization of Linn Acquisition Company, LLC and Berry Petroleum Company, LLC [Docket No. 1625] (the "Berry Plan") (referred to jointly with the Linn Plan as the "Plans").

6. On January 27, 2017, the Court entered its Order Confirming (I) Amended Joint Chapter 11 Plan of Reorganization of Linn Energy, LLC and its Debtor Affiliates other than Linn Acquisition Company, LLC and Berry Petroleum Company, LLC and (II) Amended Joint Chapter 11 Plan Of Reorganization of Linn Acquisition Company, LLC and Berry Petroleum Company, LLC [Docket No. 1629].

7. Prior to the effective date of the Plans, a dispute arose concerning whether the Berry and Linn Lenders' allowed claims properly included postpetition default interest. The parties entered into a Stipulation and Agreed Order that was approved by the Court on February 28, 2017, allowing the Plans to go effective and establishing a framework for resolving the dispute [Docket No. 1761].

---

[2] *See* Disclosure Statement [Docket No. 1355] and Plan [Docket No. 1625] filed by the Berry Debtors and the Disclosure Statement [Docket No. 1334] and Plan [Docket No. 1624] filed by the Linn Debtors.

8. On March 17, 2017, Wells Fargo filed its Motion for Entry of Order Directing Payment of Postpetition Interest Payments (the "Default Interest Motion") [Docket No. 1853]. In the motion, Wells Fargo requested payment of default interest (i) to the Linn Lenders of not less than $31,187,459.26 and (ii) to the Berry Lenders of not less than $14,331,807.96 [Docket No. 1853].

9. Objections to the Default Interest Motion were filed on March 29, 2017, by Berry Petroleum Company, LLC [Docket No. 1877], the Reorganized Linn Debtors [Docket No. 1878], the Ad Hoc Group of Linn Unsecured Noteholders [Docket No. 1879] and the Ad Hoc Group of Second Lien Noteholders [Docket No. 1880]. On April 21, 2017, trial briefs were submitted by Berry Petroleum Company [Docket No. 1938], the Reorganized Linn Debtors [Docket No. 1938], the Ad Hoc Group of Linn Unsecured Noteholders [Docket No. 1940] and Wells Fargo [Docket No. 1941]. Responsive briefs were filed on April 24, 2017, by the Reorganized Linn Debtors [Docket No. 1949], Berry Petroleum Company, LLC [Docket No. 1953] and Wells Fargo [Docket No. 1954]. Joinders were filed by the Ad Hoc Group of Linn Unsecured Noteholders [Docket No 1950] and the Ad Hoc Group of Second Lienholders [Docket No. 1959].

10. The Court conducted a hearing on the Default Interest Motion on April 27, 2017. After taking judicial notice of the Master Proof of Claim and hearing argument from the parties, the Court took the matter under advisement.

## Analysis

11. The Court has jurisdiction over this contested matter pursuant to 11 U.S.C. § 1334. This contested matter is a core proceeding arising under title 11 pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K) and (O). The Court has constitutional authority to enter a final order in this contested matter under the Supreme Court's holding in *Stern v. Marshall*, 131 S.Ct. 2594 (2011). To the extent necessary, the parties have consented to the entry of a final order by the Court. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015).

12. The parties' rights are established by the confirmed Plans. When interpreting a confirmed plan, Courts apply traditional principles of contract interpretation. *Official Creditors Comm. of Stratford of Tex., Inc. v. Stratford of Tex., Inc. (In re Stratford of Tex., Inc.)*, 635 F.2d 365, 368 (5th Cir. 1981). Absent an ambiguity, Courts review the express language of the governing document to determine the intent of the parties. *Kimbell Foods, Inc. v. Republic Nat'l Bank of Dallas*, 557 F.2d 491, 496 (5th Cir. 1977), *aff'd sub. nom. United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979); *In re Victory Markets, Inc.*, 221 B.R. 298, 303 (2d Cir. B.A.P. 1998) (explaining a confirmed plan is a binding contract between a debtor and its creditors, for which the "starting point for review" is its plain language.) The Plans provide that New York law shall govern the "rights, obligations, construction and implementation of the Plan . . . ." *See* Linn Plan Article I.D. [Docket No. 1624]; Berry Plan, Article I.D. [Docket No. 1625].

**The Plans**

13. Both the Linn Plan and the Berry Plan are substantively similar in defining the claims of the Lenders and in the treatment of the Lenders' claims. The Berry Plan defines the Berry Lender Claims as follows:

> "*Berry Lender*' means any secured party to the Berry Credit Agreement and Loan Documents (As defined in the Berry Credit Agreement).
>
> "*Berry Lender Claims*" means any Claim against the Berry Debtors derived from or based upon the Berry Credit Agreement, including any Adequate Protection Claims of the Berry Lenders. The Berry Lender Claims are Allowed Claims as set forth in the proof of claim filed by the Berry Administrative Agent in the amount determined pursuant to Article III.B.3.

*Berry Plan, Articles I.A.36. and 37.* [Docket No. 1625]. The Berry Plan provides for the treatment of the Berry Lender Claims as follows:

> *Allowance*: Notwithstanding any other provision of this Plan to the contrary, the Berry Lender Claims are Allowed as fully Secured Claims under section 506(b) of the Bankruptcy Code, having first lien priority in the amount of approximately $898 million on account of unpaid principal, plus unpaid interest, fees, expenses, and other obligations arising under or in connection with the Berry Lender Claims, as set forth in the Berry Credit Agreement or the other Loan Documents (as defined in the Berry Credit Agreement) in each case, not subject either in whole or in part to off-set, disallowance or avoidance under chapter 5 of the Bankruptcy Code or otherwise, recharacterization, recoupment, or subordination or any equitable theory (including, without limitation, subordination, disallowance, or unjust enrichment), or otherwise, and any other claims or Causes of Action that any Person including but not limited to the Berry Debtors and their estates may be entitled to assert against the Berry Lenders or the Berry Lender Claims.

*Berry Plan, Article III.B.3.(b)* [Docket No. 1625].

The Linn Plan defines the LINN Lender Claims as follows:

> "*LINN Lender*' means any secured party to the LINN Credit Agreement and Loan Documents (As defined in the LINN Credit Agreement).
>
> "*LINN Lender Claims*" means any Claim against the LINN Debtors derived from or based upon the LINN Credit Agreement, including any Adequate Protection Claims. The LINN Lender Claims are Allowed Claims as set forth in the proof of claim filed by the LINN Administrative Agent.

*Linn Plan, Articles I.A.113. and 114* [Docket No. 1624].  The Linn Plan provides for the treatment of the Linn Lender Claims as follows:

> *Allowance*: Notwithstanding any other provision of this Plan to the contrary, on the Effective Date, the LINN Lender Claims are Allowed as fully Secured Claims under section 506(b) of the Bankruptcy Code having first lien priority in the amount of $1.939 billion on account of unpaid principal, plus unpaid interest, fees, other expenses, and other obligations arising under or in connection with the LINN Lender Claims, or as set forth in the LINN Credit Agreement other Loan Documents (as defined in the LINN Credit Agreement), in each case, not subject either in whole or in part to off-set, disallowance or avoidance under chapter 5 of the Bankruptcy Code or otherwise, or any legal, contractual, or equitable theory for claims or Causes of Action (including, without limitation, subordination, recharacterization, recoupment, or unjust enrichment) that the any Person including but not limited to the Debtors and their Estates may be entitled to assert against the LINN Lenders or the LINN Lender Claims.

*Linn Plan, Article III.B.3.(b)* [Docket No. 1624].

15. Both Plans provide that the Lenders' claims are "Allowed Claims as set forth in the proof of claim . . . ." *Berry Plan, Article I.A.37.* [Docket No. 1625]; *Linn Plan, Article I.A.114.* [Docket No. 1624].  The proof of claim referred to in both Plans is the Master Proof of Claim filed by Wells Fargo. *Id.* The Master Proof of Claim consists of the national proof of claim form, a 37-page summary and reservation of rights and copies of the Credit Agreements attached as exhibits.

15. The Master Proof of Claim contains the following language with respect to the Linn Debtors:

> **Linn Claim for Interest.** … Additional interest continues to accrue at the post-default rate of two percent (2%) plus the otherwise applicable rate as provided for in Section 3.02(c) of the Linn Credit Agreement.  The total amount of Linn Interest is unliquidated.

*Master Proof of Claim, paragraph 6B at pg. 9.*  The Master Proof of Claim further states with respect to the Berry Debtors:

> **Berry Claim for Interest.** … Additional interest continues to accrue at the Default Rate as provided for in Section 2.5(d) of the Berry Credit Agreement.  The total amount of the Berry Interest is unliquidated.

*Master Proof of Claim, paragraph 8B at pg. 19-20.*

16. Both Plans specifically address the applicability of default interest. Article VI.F. of the Linn Plan provides:

*No Postpetition or Default Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, and notwithstanding any documents that govern the LINN Debtors' prepetition funded indebtedness to the contrary, (a) postpetition and/or default interest shall not accrue or be paid on any Claims and (b) no Holder of a Claim shall be entitled to: (i) interest accruing on or after the Petition Date on any such Claim; or (ii) interest at the contract default rate, as applicable.

*Linn Plan, Article VI.F.* [Docket No. 1624]. The Berry Plan provides substantially similar language:

*No Postpetition or Default Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, and notwithstanding any documents that govern the *Berry* Debtors' prepetition funded indebtedness to the contrary, (a) postpetition and/or default interest shall not accrue or be paid on any Claims and (b) no Holder of a Claim shall be entitled to: (i) interest accruing on or after the Petition Date on any such Claim; or (ii) interest at the contract default rate, as applicable; <u>provided, however, that nothing herein shall affect the payment of postpetition interest and/or adequate protection payments made to the Berry Lenders pursuant to the Cash Collateral Order.</u>

*Berry Plan, Article VI.F.* [Docket No. 1625] (*emphasis supplied to highlight differences with Article VI.F. of the Linn Plan*).

## Plan Interpretation

17. The resolution of this dispute turns on the interpretation and interplay of Articles III.B.3. and VI.F. of the Plans. Wells Fargo asserts that postpetition default interest is proper as Article III.B.3. incorporates the terms "Linn[Berry] Lender Claims," which further references the Master Proof of Claim. The Master Proof of Claim includes the statement that "interest continues to accrue at the Default Rate as provided for in [the Credit Agreements]." Wells Fargo asserts that this language excepts its claims from Article VI.F. The Debtors rely upon the straightforward language of Article VI.F. which prohibits the payment of default interest absent a specific contrary provision in the Plan or the Confirmation Order. The Debtors urge that no such exception can be found within the Plans or the Confirmation Order.

18. Article III.B.3. generally authorizes the allowance of the claims held by the Linn[Berry] Lenders, including unpaid principal, interest, fees, expenses, and other expenses and obligations arising under the Credit Agreements. Article III.B.3. contains no specific reference to default interest. In contrast, Article VI.F. contains an express prohibition against the payment

of any default interest absent a specific provision in the Plan of the Confirmation Order to the contrary. "Specifically" means "explicitly, particularly, or definitely," (*Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 38 (1996) (citation omitted)), and "with exactness and precision: in a definite manner." *Medlin v. Medlin*, 830 S.W.2d 353, 354 (Tex. App.—Amarillo 1992, *writ denied*) (citation omitted).

19. To the extent that the myriad of arguments and alternative theories advanced by the parties in this dispute contain the suggestion that a conflict exists between Article III.B.3. and Article VI.F., the Court finds no conflict. The Plans' instructions are clear. The Court further finds that the general allowance language of Article III.B.3., its reference to the Master Proof of Claim and a single statement that the Berry and Linn Lenders continue to accrue postpetition interest "is too weak a reed upon which" to form a "specific provision in the Plan or Confirmation Order to the contrary" providing for the payment of default interest. *See United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor" . . . . a court should select a "meanin[g that] produces a substantive effect that is compatible with the rest of the law."). Likewise, to the extent that Wells Fargo argues that Article III.B.3. takes precedence over Article VI.F., such a conclusion would run afoul of the "fundamental axiom of contract interpretation that specific provisions control general provisions." *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002) (quoting Restatement (Second) of Contracts § 203(c)). *See, e.g.*, *Huen N.Y., Inc. v. Bd. of Educ. Clinton Cent. Sch. Dist.*, 890 N.Y.S.2d 748, 749 (2009) ("[S]pecific provisions concerning an issue are controlling over general provisions.")

20. Notions of practicality suggest a conclusion contrary to Wells Fargo's position. Given the stakes and the extent to which complex reservations were made elsewhere in the Plans and the Confirmation Order, the Court believes that if the Berry Lenders and the Linn Lenders were truly to have been excepted from the effect of Article VI.F., a simple statement to that effect would have been included in the Plans or the Confirmation Order. *See Quadrant Structured Prods. Co. v. Vertin*, 16 N.E.3d 1165, 1172 (N.Y. 2014) ("[I]f parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission."). The maxim *expressio unius est exclusio alterius* (the expression of one is the exclusion of others) as used in the interpretation of contracts, supports this conclusion (*see generally* Glen Banks, New York Contract Law § 10.13 [West's NY Prac. Series 2006]; *see also Israel Discount Bank v. Gottesmann (In re Ore Cargo, Inc.), 544 F.2d 80, 82* (2d Cir. 1976) (finding where sophisticated drafter omits a term, *expressio unius* precludes the court from implying it from the general language of the agreement); *Quadrant,* 16 N.E.3d at 1172.

21. The existence of another reservation in Article VI.F. of the Berry Plan further supports the conclusion that the parties knew how to draft an appropriate exception but chose not to do so. Article VI.F. of the Berry Plan expressly protects the Berry Lenders' rights to post petition *non-default* interest by providing "… *provided, however*, that nothing herein shall affect the payment of post-petition interest and/or adequate protection payments *made to the Berry Lenders* pursuant to the Cash Collateral Order.") (emphasis added). Wells Fargo's suggested interpretation would render this exception meaningless and run afoul of the well-settled judicial

maxim that "a contract should be interpreted in a way that reconciles all of its provisions." *Maven Techs. v. Vasile*, 46 N.Y.S.3d 720, 722 (N.Y. App. Div. 2017); *see also Bd. of Managers of 125 N. 10th Condo. v. 125North10, LLC*, 25 N.Y.S.3d 825, 835 (N.Y. Sup. 2016) ("[W]here two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect"); *Chapman v. Orange Rice Mill. Co.*, 747 F.2d 981, 983 (5th Cir. 1984) ("We must honor the presumption that parties to a contract intend every clause to have some effect, and attempt to reconcile ambiguous provisions unless they are 'irreconcilable.' ").

22. The Court's findings and conclusions are also supported by the observed conduct of the parties in these cases. The Debtors' financial projections in the two disclosure statements do not provide for the payment of default interest. Wells Fargo raised no objections to the relevant substance of the Debtors' projections. Wells Fargo acknowledges the inherent conflict of its current position but points to the Plans' provision which provides that if a conflict exists between the Plans and the Disclosure Statement, the Plans control. The Court finds this argument unpersuasive and out of context. Moreover, the Court relied upon those projections in performing its required confirmation analysis under § 1129. Notably absent from Wells Fargo's pleadings is any explanation of how and when this purported conflict was discovered by Wells Fargo. The parties expended several million dollars in connection with the negotiation and confirmation of the Plans. The Court is confident that every word and projection was analyzed by multiple sets of eyes. The Court would find it disturbing if a sophisticated party for whom the Court allowed significant professional expenses to be paid remained silent and knowingly allowed the Court to make a decision on erroneous information. As the Court does not believe that such a situation occurred, it must therefore conclude that Wells Fargo agreed with the Debtors' projections and did not expect payment of default interest.

23. Finally, Wells Fargo asserts of number of equitable arguments in support of its request, including (i) the reasonableness of the default rate, (ii) the fact that other parties received reimbursement of fees and expenses in the case; (iii) only shareholders would suffer if default interest were paid; (iv) it allowed its collateral to be used for hedging; (v) the fact that the Debtors drew over $900 million on their credit facility just prior to the bankruptcy filing; and (vi) the fact that the Berry and Linn Lenders provided exit financing to the Debtors. The Court need not address each of these arguments. This decision is one grounded solely in legal contract interpretation. To the extent that Wells Fargo is asserting that it acted altruistically in these cases and should be rewarded, the Bankruptcy Code provides appropriate methods to address such conduct. Moreover, any such assertion is rejected. Wells Fargo, like any business enterprise, acts in its own self-interest—always weighing the various risks and opportunities for reward associated with its decisions. Wells Fargo and the institutions it represents have done nothing more in these cases than skillfully maximize the value to be extracted from the particular situation with which they were faced.

24. The Debtors suggest that the Court follow the decision in *In re Jack Kline Co., Inc.*, 440 B.R. 712, 734 (Bankr. S.D. Tex. 2010) and find that a lender's assertion of postpetition interest in a proof of claim can never suffice to assert a claim for postpetition interest. The bankruptcy process does not often lend itself to bright-line rules. The Court understands the logic of the *Jack Kline* decision based on the particular facts present in that case. The Court can

likewise envision a set of facts that could easily lead to the opposite result. The Court need not craft such a rule and declines to do so.

## Conclusion

25. The language of Article VI.F. is simple and to the point. No creditor is entitled to receive postpetition default interest absent a specific provision in the Plans or the Confirmation Order providing for such payment. Neither document provides such an exception in favor of the Berry Lenders or the Linn Lenders. The arguments advanced by Wells Fargo are unpersuasive. The Motion for Entry of Order Directing Payment of Postpetition Interest Payments is denied. An order consistent with this memorandum opinion will issue.

**SIGNED: November 13, 2017.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**